BEAUMONT v BROWN

(BEAUMONT v DIRECTOR OF DEPARTMENT OF LABOR)

Docket No. 57810. Argued February 1, 1977 (Calendar No. 11).—
Decided September 20, 1977.

Robert A. Beaumont brought a complaint against Barry C.
Brown, Director of the Department of Labor, and Arthur J.
Zink, the department's personnel director, for damages for
invasion of privacy. Plaintiff was dismissed from his job with
the Department of Labor for being absent for military duty
without approval of his supervisor and for failing to provide
training or supervision of personnel while absent. Plaintiff
appealed the dismissal to the Civil Service Commission, and
defendant Zink wrote a letter to the personnel center for the
Army Reserve to obtain information for the civil service hear-
ing. The defendant's letter characterized the plaintiff as a
"disloyal and insubordinate employee", discussed his conduct
while an employee of the department, and said that health
problems claimed by the plaintiff were inconsistent with mili-
tary service. The defendants argue that the letter was privi-
leged because it was written in the performance of official
duties, and not publicized by defendants. The Ingham Circuit
Court, Ray C. Hotchkiss, J., denied summary judgment for
defendants. The Court of Appeals, Quinn, P. J., and Bronson
and N. J. Kaufman, JJ., reversed and remanded for entry of a
summary judgment for the defendants (Docket No. 20594).
Plaintiff appeals. *Held:*

1. A person who unreasonably and seriously interferes with
another's interest in not having his affairs known to others or
his likeness exhibited to the public is liable to the other.

REFERENCES FOR POINTS IN HEADNOTES

[1–5, 7–11, 13, 15, 17] 62 Am Jur 2d, Privacy § 1.
  Right of privacy. 14 ALR2d 750.
[6] 73 Am Jur 2d, Summary Judgment § 27.
[7, 18] 62 Am Jur 2d, Privacy § 16.
[12] 62 Am Jur 2d, Privacy § 15.
[14] 62 Am Jur 2d, Privacy §§ 21, 22.
[15] 62 Am Jur 2d, Privacy § 13.
[16] 62 Am Jur 2d, Privacy § 26.

Michigan has long recognized the right of the individual to privacy. In this society all are concerned that the individual's integrity and independence be not obliterated by the dissemination of unnecessary information about his private life.

2. Defendant Zink's letter to the Army sought certain information to determine whether the plaintiff had misled the state about his military duty in order to be excused from state service. Certain information might be necessary to enable the Army to effectively answer the letter. However, defendant Zink did not have a right or a duty to convey the derogatory remarks in the letter which were not necessary to make clear the information needed or which could have just as effectively been conveyed without pejorative overtones. Plaintiff has alleged sufficient facts that the information in the letter involved "embarrassing private facts" about him to constitute a question for the jury.

3. An invasion of a plaintiff's right to privacy is important if it exposes private facts to a particular public whose knowledge of those facts would be embarrassing to the plaintiff. Such a "public" might be the general public if the plaintiff were a public figure or a particular group such as fellow employees, club members, church members, family, or neighbors if the plaintiff were not a public figure.

4. In the instant case the plaintiff's affidavits alleged that the letter was intended to cause an investigation of the plaintiff by the Army and that a letter sent with such a purpose would have to pass officially through many hands and unofficially through many more. These allegations of publication were sufficient to allow the case to go to the jury. The affidavits also allege that the letter was unnecessarily and unreasonably included in the Civil Service Commission transcript of the case against the plaintiff, thus making the exposure of the embarrassing private facts a matter of public record. These allegations of publication were sufficient to allow the case to go to the jury.

Reversed and remanded to the Court of Appeals for consideration of the remaining issues not previously addressed.

Justice Coleman, joined by Justice Fitzgerald, dissented. She wrote:

1. The general object of the right to privacy is to protect the privacy of private life and to whatever degree and in whatever connection a man's life has ceased to be private, to that extent the protection is to be withdrawn. The right of privacy has no connection with his fitness for any public or quasi-public position or with any act done by him in a public or quasi-public

capacity. No expectation of privacy can properly attach to matters brought forth in a public hearing regarding a person's behavior in employment.

2. The plaintiff has failed to show that a letter from one employer to another made a public disclosure to the public at large. The handling of the letter by a secretary in the recipient's office or even its placement in a file by the recipient is not "publication" under the doctrine of invasion of privacy as heretofore envisioned. Certainly a "leak" through the recipient's office cannot fairly be attributed to the defendants and would not, in any event, be "publicizing" by them.

3. The plaintiff's conduct and performance on the job are not intimate, personal facts which a person may reasonably demand to remain private. He cannot reasonably demand that his employer suppress an evaluation of his performance. He can only expect that the facts upon which the evaluation is made are accurate. The facts may have been embarrassing but their disclosure did not invade plaintiff's privacy under any recognized standard.

65 Mich App 455; 237 NW2d 501 (1975) reversed.

OPINION OF THE COURT

1. PRIVACY, RIGHT OF—INVASION OF PRIVACY—ACTION.

A person who unreasonably and seriously interferes with another's interest in not having his affairs known to others or his likeness exhibited to the public is liable to the other.

2. PRIVACY, RIGHT OF.

Michigan has long recognized the right of the individual to privacy; in this society all are concerned that the individual's integrity and independence be not obliterated by the dissemination of unnecessary information about his private life.

3. PRIVACY, RIGHT OF—ACTION—INVASION OF PRIVACY—ELEMENTS OF TORT.

An action for invasion of privacy may be based upon (1) intrusion upon the plaintiff's seclusion or solitude, or into his private affairs, (2) public disclosure of embarrassing private facts about the plaintiff, (3) publicity which places the plaintiff in a false light in the public eye, or (4) appropriation, for the defendant's advantage, of the plaintiff's name or likeness.

4. PRIVACY, RIGHT OF—INVASION OF PRIVACY—CIVIL SERVICE EMPLOYEES—DISCIPLINARY PROCEEDINGS.

A personnel director in a state executive department seeking

certain information from the United States Army to determine whether a civil service employee had misled the state about his military duty in order to be excused from state service did not have a right or a duty to convey to the army derogatory remarks about the employee which were not necessary to make clear the information needed or which could just as effectively be conveyed without pejorative overtones and which seem to prejudge the employee's actions before receiving the requested information.

5. PRIVACY, RIGHT OF—INVASION OF PRIVACY—EMBARRASSING PRIVATE FACTS—QUESTION OF FACT.

A plaintiff civil service employee alleged sufficient facts in an action against his department supervisors for invasion of privacy to constitute a question for the jury whether embarrassing private facts about the plaintiff were involved in a public disclosure, if any, where his supervisors characterized the plaintiff as a "disloyal and insubordinate employee", discussed his conduct while an employee of the department in a derogatory manner, and alleged that health problems claimed by the plaintiff were inconsistent with his military service (GCR 1963, 117.2[3]).

6. MOTIONS—SUMMARY JUDGMENT—QUESTION OF FACT.

Courts considering motions for summary judgment are liberal in finding that a genuine issue as to material fact does exist; the court will give the benefit of any reasonable doubt to the opposing party and must be satisfied that it is impossible for the claim or defense to be supported at trial because of some deficiency which cannot be overcome (GCR 1963, 117.2[3]).

7. PRIVACY, RIGHT OF—INVASION OF PRIVACY—PUBLIC DISCLOSURE— PARTICULAR PUBLIC.

Communication of embarrassing facts about a plaintiff to a public is not an invasion of his privacy unless it exposes the facts to a particular public whose knowledge of those facts would be embarrassing to the plaintiff; such a particular public might be the general public, if the plaintiff were a public figure, or a particular group such as fellow employees, club members, church members, family, or neighbors, if the plaintiff were not a public figure.

8. PRIVACY, RIGHT OF—INVASION OF PRIVACY—PUBLIC DISCLOSURE— QUESTION OF FACT.

A plaintiff civil service employee presented an issue of fact of public disclosure upon which reasonable persons could differ in

an action against his department supervisors for invasion of privacy where the plaintiff alleged that exposure of embarrassing private facts in a letter to a United States Army official by his department personnel director was intended to cause an investigation of the plaintiff by the Army and that such a letter sent to the head of a large bureaucracy would have to pass officially through many hands and pass unofficially through many more (GCR 1963, 117.2[3]).

9. PRIVACY, RIGHT OF—INVASION OF PRIVACY—PUBLIC DISCLOSURE—
   CIVIL SERVICE—DISCIPLINARY PROCEEDINGS—QUESTION OF FACT.

   Allegations by a plaintiff civil service employee in an action for invasion of privacy against his department supervisors that they unnecessarily included a derogatory letter in the record of a civil service disciplinary proceeding against the plaintiff presents an issue of fact upon which reasonable minds could differ as to whether there was public disclosure of the letter although the letter was addressed to only one government employee (GCR 1963, 117.2[3]).

DISSENTING OPINION BY COLEMAN, J.

FITZGERALD, J.

10. PRIVACY, RIGHT OF—INVASION OF PRIVACY—ACTION.

   *A plaintiff civil service employee did not state a cause of action for invasion of privacy under any recognized concept by alleging that his employer sent a defamatory letter personally addressed to another employer at the Army reserve asking for information about the plaintiff to be used in civil service disciplinary proceedings.*

11. PRIVACY, RIGHT OF—INVASION OF PRIVACY—CIVIL SERVICE—DISCIPLINARY PROCEEDINGS.

   *No expectation of privacy can properly attach to matters brought forth in a public hearing regarding a person's behavior in employment.*

12. PRIVACY, RIGHT OF—INVASION OF PRIVACY—ACTION—PUBLICATION
   —MASTER AND SERVANT.

   *A letter from one employer to another concerning an employee's behavior in his employment is not the kind of "publication" which has been considered an actionable evil under the doctrine of invasion of privacy.*

13. PRIVACY, RIGHT OF.

   *The general object of the right of privacy is to protect the privacy*

*of private life, and to whatever degree and in whatever connection a man's life has ceased to be private, to that extent the protection is to be withdrawn.*

14. PRIVACY, RIGHT OF—PUBLIC OFFICE.

*The right of privacy concerns the private life, habits, acts and relations of an individual which have no legitimate connection with his fitness for a public office, or for any public or quasi-public position, or with any act done by him in a public or quasi-public capacity.*

15. PRIVACY, RIGHT OF—INVASION OF PRIVACY—PUBLICATION.

*An action for invasion of privacy based on public disclosure of embarrassing private facts about the plaintiff requires publicity or public disclosure of the facts, and does not protect information which the plaintiff himself leaves open to the public eye or protect a plaintiff who is abnormally sensitive to publicity.*

16. PRIVACY, RIGHT OF—INVASION OF PRIVACY—PUBLICATION.

*Handling of an employer's letter about an employee by a secretary in the recipient's office or even its placement in a file by the recipient is not publication under the doctrine of invasion of privacy; certainly a "leak" of the information in the letter through the recipient's office cannot fairly be attributed to the employer and would not, in any event, be "publicizing" by the employer.*

17. PRIVACY, RIGHT OF—INVASION OF PRIVACY—WORDS AND PHRASES.

*Private facts are not all facts one wishes to keep secret; they are facts which are intimate, personal facts which a person may reasonably demand to remain private.*

18. PRIVACY, RIGHT OF—INVASION OF PRIVACY—PUBLIC EMPLOYEES—JOB EVALUATION.

*A public employee's conduct and performance on the job are not private facts which he can demand that his employer suppress; he can only expect that the facts upon which the evaluation is made are accurate.*

*Newman & Mackay* for plaintiff.

*Farhat, Burns & Story, P. C.* (by *Vittorio E. Porco)* for defendants.

WILLIAMS, J. This action for invasion of privacy is based upon derogatory statements in a letter

written by plaintiff's employers to the AGUC-TAD, United States Army Reserve Components Personnel and Administration Center. Plaintiff characterizes this letter as an attempt to have him court-martialed or relieved of his position with the United States Army Reserve as a Lieutenant Colonel. Plaintiff was indeed subjected to military review subsequent to the receipt of defendant Zink's letter. This case is before us on a motion for summary judgment brought by the defendants, which was denied by the trial court, for a number of reasons, but granted by the Court of Appeals on the basis that the facts did not support a cause of action for invasion of privacy. Since the Court of Appeals did not reach the other issues presented in the motion for summary judgment, we do not consider them here.

On review of the facts and the law concerning the invasion of privacy issue, we hold that plaintiff has presented sufficient facts to go to the jury, since reasonable persons could differ in determining whether plaintiff has proven an invasion of his privacy. We, therefore, reverse the summary judgment granted defendants on the invasion of privacy cause of action and remand to the Court of Appeals to consider the remaining issues raised by the motion for summary judgment.

## I—FACTS

Plaintiff Robert Beaumont was employed as a labor safety supervisor for the Michigan Department of Labor. Defendant Barry Brown was director of the Department of Labor at that time and defendant Arthur Zink was the personnel director. On November 20, 1972, defendant Zink discharged plaintiff upon the recommendation of plaintiff's immediate supervisor. The reasons given were: (1)

that plaintiff was absent from his job for a month of military reserve duty without approval of, or notification to, his supervisor; (2) that plaintiff made no plans for the continuation of the training of a new employee while he was gone; and (3) that plaintiff made no plans for the supervision of field personnel while he was gone.

Plaintiff appealed his dismissal to the Michigan Civil Service Commission and hearings were held on January 31 and February 2, 1973. A final hearing was scheduled for March 1, 1973.

On February 14, 1973, in an ostensible effort to verify plaintiff's military duties, defendant Zink wrote a lengthy letter[1] to the AGUC-TAD, U. S. Army Reserve Components Personnel and Administration Center, requesting confirmation of plaintiff's military schedule and information concerning military procedure for reservists. However, defendant Zink also included in the letter such statements about plaintiff Beaumont as the following:

(a) "was considered to be an extremely disloyal and insubordinate employee";

(b) "has used his reserve status in an abusive and manipulative manner";

(c) "was dismissed because of abandonment of duties and dereliction of supervisory responsibilities with the Michigan Department of Labor";

(d) "was not to attend [the National Safety Congress] as a representative of the Department of Labor because frankly his prior conduct had led us to believe that he would not represent the best interests of the department";

(e) "We have never had any problem with any other employee except Mr. Beaumont";

(f) "Only Mr. Beaumont disappears for a month at a time and later tells us that he was on military leave

---

[1] A copy of the letter is in the appendix to the opinion of the Court of Appeals, 65 Mich App 455, 467; 237 NW2d 501 (1975).

and that his duty is so secret and delicate that he cannot discuss it";

(g) "One other technique used by Mr. Beaumont when he chooses not to take direction or follow instructions, concerns his health. Although this item has nothing to do with the dismissal I think it significant enough to mention. Mr. Beaumont has presented statements from various doctors to require that he be allowed to travel in his air conditioned Mercedes rather than in a state car. He is unable to fly; he is unable to get up early; he is unable to go into dirty or dusty industrial establishments, etc. We have even received statements that his condition is so delicate that he could keel over at any time. It would lead us to wonder how an individual with such delicate health could pass any army physical to remain in the reserves".

The above statements are among others stated in the letter and bear no relation to the inquiry directed by defendant Zink.

The Army's reply provided the information requested, but the objected-to letter as well as the Army's reply was made a part of the Civil Service Commission's case. Plaintiff's dismissal was subsequently upheld by the Civil Service Commission.

On September 11, 1973 plaintiff filed an invasion of privacy complaint in Ingham County Circuit Court alleging:

"4. That the defendants conspired and actually committed acts of conspiracy by attempting to disparage plaintiff's position with the U. S. Army Reserve, and on February 14, 1973, directed a letter to AGUC-TAD, U. S. Army Reserve Components, Personnel and Administration Center in St. Louis, Missouri; said letter being defamatory and a breach of the plaintiff's right of privacy in an attempt to have the plaintiff court-martialed or relieved of his position with the U. S. Army Reserve as a Lieutenant Colonel, as the plaintiff is informed and believed. A copy of said letter is attached

hereto and is incorporated by reference, and referred to as Exhibit 1.

"5. That as a result of said letter being sent to the Army, the plaintiff's military records were 'flagged' which resulted in the plaintiff's being removed from active duty training programs during the period of time while his records were 'flagged.' That he was investigated by a member of the U. S. Army as a result of the letter being sent to the U. S. Army Reserve and he was required to hire an attorney to defend him with resultant expense."

Defendants moved to dismiss the complaint and for summary judgment alleging:

"1. That the complaint fails to state a legally sufficient claim or cause of action upon which relief can be granted.

"2. That, while the complaint seeks to hold the defendants personally liable for the alleged violation of plaintiff's privacy, it is clear that the defendants are being sued in their capacity as employees and officials of the Michigan Department of Labor and the State of Michigan, and that the complaint is, in fact, one against the State of Michigan and the Department of Labor.

"3. That the State or [sic] Michigan and the Michigan Department of Labor are immunized from liability for torts of the nature alleged in this case, while immunity extends to its officials and employees acting for the state in the performance of its governmental functions within the scope of their official duties.

"4. That the complaint fails to state a claim upon which relief can be granted in that it fails to allege that the letter complained of was publicized and further fails to allege that the reply thereto was publicized by the defendants and used for other than official purposes.

"5. That the complaint fails to state a claim upon which relief can be granted in that it shows on its face that the letter complained of and the reply thereto were privileged communications which were written and received by public officers for public purposes.

"6. That the complaint fails to state a claim upon which relief can be granted in that it contains no factual allegations (1) from which it could be determined that the letter was defamatory per se; (2) as to what portion of the letter, if any, was defamatory and responsible for the damages which the plaintiff alleges; (3) wherein the defendants exceeded their authority and duties as public employees and officials in the performance of their governmental duties.

"7. That this court has no jurisdiction over the subject matter for the reason that the Court of Claims has exclusive jurisdiction of suits, *ex delicto* and *ex contractu,* brought against the state and any of its departments, commissions, boards, institutions, arms or agencies."

Defendants attached affidavits to their motion and stated:

"This motion is based on the records and files of this court and cause and on affidavits of Arthur J. Zink and Barry C. Brown attached hereto."

Plaintiff filed opposing affidavits, particularly with respect to the allegation that the complaint fails to allege publication of the letter as follows:

"16. Both Exhibit 1 and Exhibit B were introduced into a public hearing and contained in the Civil Service hearing transcript that is a matter of public record and available to any tax payer. Furthermore, it is an acknowledged fact that there are 'no secrets in State government' because someone had to type the original letter, handle it, mail it and the same goes for Army employees in the various offices and headquarters receiving the letter signed by Mr. Zink on February 14, 1973. Additionally, two unsigned letters were distributed in April of 1973 to professional colleagues and fellow members of the Michigan State Employee's Association subsequent to Mr. Zink's February 14, 1973, letter to the Army. Both of these letters alluding to the

derogatory material contained in that letter. Further-
more, the affiant did not possess or have any knowledge
of Mr. Zink's February 14, 1973 letter to the Army
until some five months later and the contents of the
letter were obviously leaked or simply spread to em-
ployees through lack of security or safeguarding of this
document."

On March 21, 1973 the trial judge, after review-
ing "the pleadings and briefs", denied defendants'
motion for summary judgment stating the com-
plaint raised "a sufficient factual dispute for con-
sideration by a jury". Defendants appealed, and on
November 12, 1975 the Court of Appeals reversed
the decision of the trial court. The Court of Ap-
peals stated:

"We decide only that plaintiff did not allege sufficient
facts in his pleadings and affidavits to allow the case to
go to the jury on any recognized theory of invasion of
privacy." 65 Mich App 455, 466.

The Court found plaintiff had failed to allege facts
to meet the public disclosure requirement of inva-
sion of privacy through public disclosure of embar-
rassing private facts.

"Assuming plaintiff can prove the facts he sets forth
in his affidavit, an insufficient showing of public disclo-
sure has been made out by him. Supportive personnel
of the sender and receiver of a letter do not constitute
the 'general public' or a 'large number of persons'
* * * ." 65 Mich App 455, 464.

The Court also noted:

"[T]he facts disclosed to the Army Reserve do not
seem to be 'private' ones. This branch of invasion of
privacy does not look to whether the information con-
veyed is true or false, but whether it is something an

ordinary person has a right to keep private. The clear thrust of the letter is that plaintiff manipulated his reserve duty to his employer's detriment and submitted false health reports to either the Army or his employer. Those facts relate to job performance, and defendants had a right, if not a duty, to convey them to the Army." 65 Mich App 455, 465.

The court instructed

"the trial judge to enter summary judgment under GCR 1963, 117.2(3) in favor of defendants on the invasion of privacy cause of action." 65 Mich App 455, 466.

The Court of Appeals expressly stated:

"We do not reach the two other grounds upon which defendants based their summary judgment motion— governmental immunity and the absolute privilege with respect to statements made by public officials in the performance of their duties." 65 Mich App 455, 466.

Plaintiff's application to appeal to the Supreme Court, the order of grant and the briefs and arguments were all limited to the right of privacy issue.

The Court of Appeals, following their decision in *Todd v Biglow,* 51 Mich App 346, 349–350; 214 NW2d 733 (1974),[2] reviewed the motion as though

---

[2] This Court has not before spoken specifically to the problem addressed by the Court of Appeals in *Todd.* There, after depositions were taken, defendants filed a motion for summary judgment stating that "plaintiff has failed to state a cause of action upon which relief can be granted". The trial judge, after viewing the briefs, depositions and oral argument, granted the motion for summary judgment in favor of defendant. Plaintiff alleged error by the trial court in examining the depositions and interrogatories in that a motion brought upon GCR 1963, 117.2(1) is to be tested by the pleadings alone. The Court of Appeals found that neither party had been "misled" concerning the substance of the motion, therefore it would analyze the motion on the basis of GCR 1963, 117.2(3), which requires the court to examine matters beyond the pleadings.

it were based on GCR 1963, 117.2(3)[3] rather than on GCR 1963, 117.2(1). Since neither party raises the issue, we do not consider it, but proceed to the merits.

## II—INVASION OF PRIVACY IN MICHIGAN AND ELSEWHERE

Michigan was one of the first jurisdictions to acknowledge the concept of "right of privacy". In *De May v Roberts,* 46 Mich 160; 9 NW 146 (1881), Mrs. Roberts was giving birth in her home. The attending physician, Dr. De May, brought a young man, Mr. Scattergood, to assist in carrying his bags. Mrs. Roberts assumed Mr. Scattergood was a student or physician; he was not. He remained in the room during the delivery and at one point, as directed by Dr. De May, held Mrs. Roberts' hand. When Mrs. Roberts later discovered the true nature of Mr. Scattergood's presence she sued both Dr. De May and Mr. Scattergood. From a verdict for Mrs. Roberts, the defendants appealed.

In affirming the decision for Mrs. Roberts, the court said:

"Dr. De May therefore took an unprofessional young unmarried man with him, introduced and permitted him to remain in the house of the plaintiff, when it was apparent that he could hear at least, if not see all that was said and done, and as the jury must have found, under the instructions given, without either the plaintiff or her husband having any knowledge or reason to

---

[3] GCR 1963, 117.2(3) states "The motion for summary judgment shall state that the moving party is entitled to judgment in his favor because * * * (3) * * * there is no genuine issue as to any material fact * * * ". GCR 1963, 117.2(3) is governed by GCR 1963, 117.3 which requires the moving party and permits the opposing party to submit affidavits. It directs the court to consider the affidavits, pleadings, depositions, admissions and documentary evidence filed in the action before reaching a decision on the motion.

believe the true character of such third party. It would
be shocking to our sense of right, justice and propriety
to doubt even but that for such an act the law would
afford an ample remedy. To the plaintiff the occasion
was a most sacred one and no one had a right to
intrude unless invited or because of some real and
pressing necessity which it is not pretended existed in
this case. *The plaintiff had a legal right to the privacy
of her apartment at such a time, and the law secures to
her this right by requiring others to observe it, and to
abstain from its violation.*" (Emphasis added.) 46 Mich
160, 165–166.

Warren and Brandeis, in their 1890 article *The
Right to Privacy*,[4] provided tort law with the nu-
cleus of the concept, invasion of privacy. The right
of privacy, thus less than 100 years old, has yet to
cease evolving.[5]

In *Pallas v Crowley, Milner & Co*, 322 Mich 411;
33 NW2d 911 (1948), a cause of action for invasion
of privacy was again recognized by this Court.
Mrs. Pallas sued for the unauthorized publication
of her photograph as part of an advertisement.
The defendant moved to dismiss for failure to state
a cause of action. The motion was granted. Mrs.
Pallas appealed.

This Court found that the weight of authority in
most jurisdictions considered an unauthorized pub-
lication of this nature an invasion of a person's
right of privacy. This Court stated:

"The general rule (to which, of course, there are

---

[4] Warren and Brandeis, *The Right to Privacy,* 4 Harv L Rev 193
(1890).

[5] In *Privacy As an Aspect of Human Dignity: An Answer to Dean
Prosser,* 39 NYU L Rev 962 (1964), Professor Bloustein comments
upon the confusion in the area of invasion of privacy by quoting a
distinguished federal judge that likened it to a "haystack in a hurri-
cane".

exceptions) is stated thus in the American Law Institute's 4 Restatement, Torts, p 398, § 867:

" 'A person who unreasonably and seriously interferes with another's interest in not having his affairs known to others *or his likeness exhibited to the public* is liable to the other.' " 322 Mich 411, 416. (Emphasis supplied by the *Pallas* Court.)

Since 1948 Michigan has continued to recognize the right of the individual to privacy. An overwhelming majority of state courts[6] has recognized a common law right to privacy, and the United States Supreme Court has also recognized a constitutional right to privacy.[7] Several states have enacted legislation protecting the individual's right to privacy.[8] The federal government has recently enacted such legislation.[9] In this ever advancing society all are concerned that the individual's integrity and independence are not obliterated by the dissemination of unnecessary information about his private life.

### III—EMBARRASSING PRIVATE FACTS

The Court of Appeals in a learned discussion of the law of invasion of privacy noted that Prosser, Torts (4th ed), § 117, p 804, recognized four types of invasion of privacy.[10] 65 Mich App 455, 461.

[6] Prosser, *Privacy,* 48 Cal L Rev 383, 386 (1960).

[7] *Griswold v Connecticut,* 381 US 479; 85 S Ct 1678; 14 L Ed 2d 510 (1965).

[8] Prosser, *Privacy,* 48 Cal L Rev 383, 388 (1960).

[9] The Privacy Act of 1974, 5 USC 552a(b).

[10] "1. Intrusion upon the plaintiff's seclusion or solitude, or into his private affairs.

"2. Public disclosure of embarrassing private facts about the plaintiff.

"3. Publicity which places the plaintiff in a false light in the public eye.

"4. Appropriation, for the defendant's advantage, of the plaintiff's name or likeness." Prosser, *Privacy,* 48 Cal L Rev 383, 389 (1960).

While that Court spoke to all four types it appears that it considered the instant case a type two case —"Public disclosure of embarrassing private facts about the plaintiff". The opinion disposed of the matter on the question of "public disclosure", 65 Mich App 455, 464, but also opined the "facts disclosed to the Army Reserve do not seem to be 'private' ones" as follows:

"It should also be noted that the facts disclosed to the Army Reserve do not seem to be 'private' ones. This branch of invasion of privacy does not look to whether the information conveyed is true or false, but whether it is something an ordinary person has a right to keep private. The clear thrust of the letter is that plaintiff manipulated his reserve duty to his employer's detriment and submitted false health reports to either the Army or his employer. Those facts relate to job performance, and defendants had a right, if not a duty, to convey them to the Army. If the facts were indeed false, they would still be non-private, although another type of invasion of privacy claim may be available to redress any injuries to plaintiff." 65 Mich App 455, 465.

We review whether plaintiff has alleged sufficient facts to go to the jury on the invasion of privacy cause of action based on "embarrassing private facts".

Defendant Zink's letter sought certain information from the Army to determine whether Beaumont had misled the state about his military duty in order to be excused from state services. Certain orientation information might be necessary to enable the Army to effectively answer defendant Zink's inquiry. However, to say that about all of the derogatory remarks contained in defendant's letter, defendant "had a right, if not a duty, to convey them to the Army" is a statement we are neither bound to, nor do we, accept.

First, that plaintiff "was considered to be an extremely disloyal and insubordinate employee" of the State of Michigan, even if true, was not a necessary statement for defendant Zink to make in order to make clear the information needed. The same may be said of the information that he "was dismissed because of abandonment of duties and dereliction of supervisory responsibilities with the Michigan Department of Labor", although that was a matter of record. In the same category are the following statements:

1. "[W]as not to attend as a representative of the Department of Labor because frankly his prior conduct had led us to believe that he would not represent the best interests of the department."

2. "We have never had any problem with any other employee except Mr. Beaumont."

While the statement "has used his reserve status in an abusive and manipulative manner" may help clarify the matter of defendant's concern, it could justifiably be said that the same information could just as effectively be conveyed without such pejorative overtones. The remark would seem to prejudge plaintiff's actions before receiving the requested information.

The statement "Only Mr. Beaumont disappears for a month at a time and later tells us that he was on military leave and that his duty is so secret and delicate that he cannot discuss it", by itself might be proper for the legitimate purposes of defendant Zink's letter, but in combination with the other statements mentioned it seems only to add fuel to the fire.

Finally, the snide remarks about plaintiff's health in the following quotation certainly, as

admitted by defendant Zink in the letter, are not necessary to defendant's request.

"One other technique used by Mr. Beaumont when he chooses not to take direction or follow instructions, concerns his health. Although this item has nothing to do with the dismissal I think it significant enough to mention. Mr. Beaumont has presented statements from various doctors to require that he be allowed to travel in his air conditioned Mercedes rather than in a state car. He is unable to fly; he is unable to get up early; he is unable to go into dirty or dusty industrial establishments, etc. We have even received statements that his condition is so delicate that he could keel over at anytime. It would lead us to wonder how an individual with such delicate health could pass any army physical to remain in the reserves."

The Army, obviously, had not inquired about plaintiff's health and was not looking for commentary on the efficiency of their physical examinations.

In short, in our opinion, defendant was under no duty to make the statements just noted. Furthermore, plaintiff alleged sufficient facts to constitute a question for the jury as to whether "embarrassing private facts" about the plaintiff were involved in a public disclosure, if any.

## IV—PUBLIC DISCLOSURE

Plaintiff, in his affidavit in support of his answer to defendants' motion for summary judgment with affidavits attached, alleged in paragraph 16 that there was publication of the letter from defendant Zink dated February 14, 1973 to AGUC-TAD, U. S. Army Reserve Components Personnel and Administration Center, in that (1) the letter was "introduced into a public hearing and contained in the

civil service hearing transcript that is a matter of public record", and (2) " 'there are no secrets in state government' * * * and the same goes for Army employees". Plaintiff alleged, as proof of the lack of security given the letter, that knowledge of the letter reached him later through rumor.

The Court of Appeals, applying the standard suggested by Prosser, Torts (4th ed), § 117, which requires publicity to more than a few, found plaintiff had "failed to allege facts that would satisfy the publicity requirement", 65 Mich App 455, 464, and granted the summary judgment. The Court of Appeals stated the law as to public disclosure to be: "[A]ll the cases recognize a general requirement of communication to the general public as opposed to a few individuals." 65 Mich App 455, 463.

In *Hawley v Professional Credit Bureau, Inc*, 345 Mich 500, 507; 76 NW2d 835 (1956), this Court stated the publicity requirement as action giving "unnecessary publicity to plaintiff's conduct".[11] In his dissent Justice TALBOT SMITH stated for himself and Justice BLACK:

"The common denominator in all of these cases is an unreasonable and serious interference with the plaintiff's interest in not having his affairs known to others. 4 Restatement, Torts, § 867. The wrong depends not upon conduct otherwise tortious (*i.e.,* trespass, defamation) nor does it turn upon breach of confidence, or truth or untruths, or an arithmetical measure of the numbers who witnessed the exposure, or the particular method thereof, whether by placard [citations omitted]

---

[11] This Court in *Hawley* found no cause of action for invasion of privacy based on a letter, sent by a collection agency to plaintiff's employer, requesting assistance in collecting a debt owed by plaintiff. The court found "no unnecessary publicity" was given to plaintiff conduct in that the letter only went to plaintiff's employer and implied that the collection agency acted in a reasonable manner.

or by letter [citations omitted]. The wrong is done when
the curtain of privacy is lifted." 345 Mich 500, 514.

Justice SMITH's opinion made it clear that under
circumstances such as those in *Hawley,* publica-
tion of the embarrassing facts to only one person
alone was unlawful publication.

We will not now attempt to numerically mea-
sure the persons to whom the letter was publi-
cized; instead we will review the pleadings and
affidavits, using the standard established by *Rizzo
v Kretschmer,* 389 Mich 363, 372; 207 NW2d 316
(1973), to determine whether plaintiff has alleged
sufficient facts to present a "genuine issue as to
material fact", GCR 1963, 117.2(3).

> "The courts are liberal in finding that a 'genuine
> issue' does indeed exist. As Honigman & Hawkins
> [Michigan Court Rules Annotated (2d ed)] correctly
> comments, (1) the court will 'give the benefit of any
> reasonable doubt to the opposing party' and (2) 'the
> court must be satisfied that it is impossible for the
> claim or defense to be supported at trial *because of
> some deficiency which cannot be overcome.'* (Emphasis
> added.)"

Only after a careful study of the facts in plaintiff's
case will we be able to decide whether a fact
question has been presented on the issue of public
disclosure.

A look at the manner in which other jurisdic-
tions have dealt with this problem is enlightening.
In *Biederman's of Springfield, Inc v Wright,* 322
SW2d 892, 898 (Mo, 1959)[12] in deciding whether

---

[12] The plaintiff-creditor sued for collection of the debt. The defend-
ant-debtor counter-claimed, based on plaintiff's actions in attempting
to collect the debt. The trial court dismissed the counter-claim and
defendant appealed. The defendant-wife was a waitress in a restau-
rant. On three separate occasions plaintiff, in attempting to collect
the account from defendant, went to the restaurant and made "loud,

publicity, as defined by Prosser on Torts (2d ed), § 97, "in the sense of communication to the public in general or to a large number of persons, as distinguished from one individual or a few", was met, the Court said "We believe that the oral publication over the three-day period in a public restaurant with numerous customers present satisfies any reasonable requirement as to publicity".

In *Santiesteban v Goodyear Tire & Rubber Co,* 306 F2d 9, 11 (CA 5, 1962), there was a "demonstrative publication as distinguished from an oral communication" to an admittedly limited number of people. This was a diversity action for invasion of privacy applying Florida law. Appellant was a waiter at the Coral Gables Country Club. He had previously purchased tires from Goodyear; his payments were current. Goodyear agents removed the tires from the automobile while it was located in the country club parking lot, leaving it standing on the rims in full view of fellow employees and country club members. This case was before the United States Court of Appeals on a motion to dismiss for lack of jurisdictional amount. The Court used Prosser, Torts (2d ed), § 97, as a guide for the publication requirement necessary for public disclosure of embarrassing private facts. The Court had no difficulty deciding that "Florida courts would hold this complaint to state a cause of action in tort for invasion of the right of privacy", even though only those who viewed the parking lot of the country club would have had knowledge of the action.

The "publications" in *Biederman's* and *Santiesteban* presented instances of oral publication and

---

overbearing, tough, degrading and embarrassing demands" for payment of the account. The Supreme Court of Missouri reversed the trial court's ruling that the counter-claims failed to state claims upon which relief could be granted and remanded the cause.

demonstrative publication, under circumstances much less conducive to public exposure than those alleged by plaintiff. Yet, in both cases the courts held that a cause of action was stated, because unnecessary publicity was given plaintiff's conduct. The facts, as alleged by Mr. Beaumont, present a more compelling picture of private facts being given unnecessary publicity.

Although defendants allege that the letter was addressed only to "United States Army Reserve Adjutant General", it is contended by plaintiff that such an allegation does not present a realistic view of the situation, there being "no secrets in state government" and likewise the Army. Plaintiff implies that letters from or to government agencies are not the same as letters between individuals, even if the letters are addressed to individuals within the government. Plaintiff contends that defendants were attempting to disparage his position with the United States Army Reserve and that as a result of the letter his records were flagged and elimination proceedings were started. Due to the nature of the derogatory remarks contained in the letter, it was sure to be circulated through the Army's bureaucracy.

These circumstances would tend to support the view expressed by plaintiff that this letter, although technically addressed to an individual within the government structure, is a "publication" to more than the addressee.

Plaintiff further contends that the letter was submitted in the civil service transcript and is now a matter of public record for all to view. If this allegation is true it would be strong evidence of unnecessary publicity. It would certainly appear unnecessary for defendants to submit the letter when the information they requested for the hearing was provided in the reply from the Army. The

derogatory remarks contained in the letter would have been published to the "public in general"[13] by being made a part of the transcript of the Civil Service hearing.

In both *Biederman's* and *Santiesteban* the instances of exposure were transitory; one was a demonstrative publication, the other an oral publication on three occasions. In the instant case there is a letter which has allegedly been made a part of a public record by defendants, and initiated a military elimination proceeding. This action is certainly more drastic than either *Biederman's* or *Santiesteban* and presents an issue of fact upon which reasonable persons could differ as to whether "unnecessary publicity" had been given. As Chief Justice KAVANAGH said in his dissent to *Reed v Ponton,* 15 Mich App 423, 427; 166 NW2d 629 (1968):[14]

"I do not think it can be said that all reasonable men would agree that the details of such relationship are not private matters, or that the announcement of them in a loud voice in the store was not a publication of them or that this was not an unreasonable and serious interference with plaintiff's privacy. For this reason we cannot say as a matter of law that no cause of action was pleaded.

"I would hold that the jury should have been permitted to determine whether the asserted invasion of plaintiff's privacy was an unreasonable and serious interference with her right to have her private affairs kept from the public."

[13] Defendants cannot now claim as a defense that the information is a matter of public record because it was by their allegedly wrongful acts that it was made public. If defendants had any claim that the letter was a privileged publication because introduced into a Civil Service Commission action they did not argue it.

[14] In *Reed,* "[t]he plaintiff asserted that when she was in defendant's store on business, defendant's manager charged from his office and in a loud and abusive manner charged her with failing to pay for her layaway purchase". The trial court dismissed the invasion of the right of privacy count and the Court of Appeals found no error.

V—CONCLUSION

This Court and the Court of Appeals have applied the following criteria in discussing the publication requirement for invasion of privacy through public disclosure of embarrassing private facts:

(1) "unnecessary publicity", *Hawley,* 345 Mich 500, 507;

(2) "unreasonable and serious interference with the plaintiff's interest in not having his affairs known to others. 4 Restatement, Torts, § 867", *Hawley,* SMITH, J., dissenting, 345 Mich 500, 514;

(3) "communication * * * to the public in general or * * * to a large number of people", *Reed,* 15 Mich App 423, 426;

(4) "communication to the general public as opposed to a few", *Beaumont,* 65 Mich App 455, 463.

We believe the Court of Appeals language is unduly restrictive. Both the language of the majority and minority in *Hawley,* 345 Mich 500, voice a more liberal standard; "unnecessary publicity" does not call to mind the necessity of publication to everyone and there certainly can be "unreasonable and serious interference" with one's privacy without everyone being informed. This raises a question as to the Court of Appeals language "communication * * * to the public in general or * * * to a large number of people" or "communication to the general public as opposed to a few".

To begin with "communication to the general public" is somewhat ambiguous, because a communication rarely, if ever, reaches everyone. It is therefore in order to consider the significance of communicating to the public. Communication of embarrassing facts about an individual to a public not concerned with that individual and with whom

the individual is not concerned obviously is not a "serious interference" with plaintiff's right to privacy, although it might be "unnecessary" or "unreasonable". An invasion of a plaintiff's right to privacy is important if it exposes private facts to a public whose knowledge of those facts would be embarrassing to the plaintiff. Such a public might be the general public, if the person were a public figure, or a particular public such as fellow employees, club members, church members, family, or neighbors, if the person were not a public figure.

Here we have developed the criterion of a particular public, whose knowledge of the private facts would be embarrassing to the plaintiff, and this criterion is not consonant with the two generalizations of the Court of Appeals. As Justice SMITH said, we do not engage in a numbers game and therefore we leave the criterion here announced to be illustrated by this and future cases.

In this case, the plaintiff's affidavits stated that the alleged exposure of embarrassing private facts in defendant's letter was a conspiracy to cause an investigation of him by the Army and that a letter sent with such a purpose to the head of a large bureaucracy would, in the nature of things, have to officially pass through many hands and unofficially pass through many more. We hold that such allegations of publication were sufficient allegations of "unnecessary publicity" and "unreasonable and serious interference" with plaintiff's right to privacy to allow the case to go to the jury.

Plaintiff's affidavits also alleged that defendant Zink's letter, with the alleged embarrassing private facts, was "unnecessarily" and "unreasonably" included in the Civil Service Commission transcript of the case against him, thus making

the alleged exposure of the embarrassing private facts a matter of public record. We hold that such allegations of publication were sufficient allegations of "unnecessary publicity" and "unreasonable * * * interference" with plaintiff's right to privacy to allow the case to go to the jury.

We further hold that plaintiff has alleged sufficient facts to constitute a question for the jury as to whether "embarrassing private facts" about the plaintiff were involved in a public disclosure, if any.

Our review was limited to the invasion of privacy issue. We find that plaintiff has presented sufficient facts and that reasonable persons might differ as to whether there was an invasion of plaintiff's right to privacy. For that reason we reverse and remand to the Court of Appeals so that it may consider the remaining issues in defendants' motions for summary judgment which were not previously addressed.

Kavanagh, C. J., and Levin, Ryan, and Blair Moody, Jr., JJ., concurred with Williams, J.

Coleman, J. *(to affirm)*. In his complaint, plaintiff Beaumont charged that defendant Zink, "with the advice, consent and under the direction of" defendant Brown, sent a letter to the Army Reserve, "said letter being defamatory and a breach of the plaintiff's right of privacy". At the time when the letter was written, Arthur J. Zink and Barry C. Brown were personnel officer and director, respectively, of the Michigan Department of Labor, a state agency. Plaintiff has not stated an invasion of privacy case under any recognized concept. No expectation of privacy can properly attach to matters brought forth in a public hearing regarding a person's behavior in employment.

Nor is a letter from one employer to another the kind of "publication" to the general public heretofore considered as an actionable evil under this doctrine.

Although we cannot now know, plaintiff may have a defamation claim, but he does not have a valid claim for invasion of privacy.

I would affirm the Court of Appeals.[1]

## I

Beaumont was a labor safety supervisor for the Michigan Department of Labor. He was also a Lieutenant Colonel in the United States Army Reserve. In November, 1972, Zink discharged him on the recommendation of Beaumont's supervisor. The primary reason was that Beaumont had left his job for a month of military duty without telling or receiving the approval of his supervisor. Beaumont also had not arranged for anyone to take over his duties.

Beaumont appealed the discharge. After "a great deal of testimony * * * and a total of 74 exhibits introduced by" Beaumont, a hearing officer said the department "was justified in terminating [Beaumont's] employment under the laws of this state and the rules of the Civil Service Commission".

The hearing report described Beaumont as having "failed in his duties". His conduct was "contrary, not only to departmental policy, but to good standards of conduct in public or private employment". In addition to other reprehensible behavior, he solicited letters from subordinates which criticized departmental standards. This "in and of

[1] The Court of Appeals did not discuss the issue of governmental immunity, having reversed on other grounds.

itself is unsatisfactory conduct". Plaintiff also altered his orders from the army to cover his whereabouts and apparently claimed he was on some classified activity.

The hearings were conducted on January 31, 1973 and February 2, 1973 before being adjourned for final hearing on March 1, 1973.

After the February 2 hearing, Zink wrote a letter to the Army Reserve for information about Beaumont's military status, the amount of time taken for training, the content of certain orders and the employee's obligations. Zink described Beaumont as "an extremely disloyal and insubordinate employee" who "used his reserve status in an abusive and manipulative manner".

This letter is the basis for Beaumont's complaint. The trial court denied defendant's motion for summary judgment. The Court of Appeals reversed as to the invasion of privacy count.

Citing Prosser, *Privacy,* 48 Cal L Rev 383 (1960), the Court of Appeals said invasion of privacy "is actually a categorization of four separate causes of action". As listed by Prosser, they are:

"1. Intrusion upon the plaintiff's seclusion or solitude, or into his private affairs.

"2. Public disclosure of embarrassing private facts about the plaintiff.

"3. Publicity which places the plaintiff in a false light in the public eye.

"4. Appropriation, for the defendant's advantage, of the plaintiff's name or likeness."

The Court found the complaint not sufficient "to allow the case to go to the jury on any recognized theory of invasion of privacy". The Court did not pass "on any possible defamation claim arising out of this set of facts".

## II

Although Justice COOLEY had identified a right "to be let alone",[2] this was not given a name until 1890 when Warren and Brandeis wrote *The Right to Privacy,* 4 Harv L Rev 193, 195–197 (1890). They were seeking "a principle which can properly be invoked to protect the privacy of the individual".

Warren and Brandeis were especially concerned with "the evil of the invasion of privacy by the newspapers" and "the question whether our law will recognize and protect the right to privacy in this and in other respects":

"Of the desirability—indeed of the necessity—of some such protection, there can, it is believed, be no doubt. * * * The intensity and complexity of life, attendant upon advancing civilization, have rendered necessary some retreat from the world, and man, under the refining influence of culture, has become more sensitive to publicity, so that solitude and privacy have become more essential to the individual; but modern enterprise and invention have, through invasions upon his privacy, subjected him to mental pain and distress, far greater than could be inflicted by mere bodily injury. Nor is the harm wrought by such invasions confined to the suffering of those who may be made the subjects of journalistic or other enterprise. In this, as in other branches of commerce, the supply creates the demand. Each crop of unseemly gossip, thus harvested, becomes the seed of more, and, in direct proportion to its circulation, results in a lowering of social standards and of morality."

The authors recognized limitations to the right. Its general object "is to protect the privacy of private life, and *to whatever degree and in whatever connection a man's life has ceased to be*

---

[2] Cooley on Torts (2d ed), p 29.

*private * * * to that extent the protection is to be
withdrawn".* (Emphasis added.) The right of pri-
vacy concerns "the private life, habits, acts, and
relations of an individual" which have no legiti-
mate connection with "his fitness for a public office
* * * or for any public or quasi public position" or
with *"any act done by him in a public or quasi
public capacity".* Warren and Brandeis, *supra,*
215–216. (Emphasis added.)

As Dean Prosser noted in his article on *Privacy,*
the right is now "declared to exist by the over-
whelming majority of the American courts" but
"[w]hat has emerged from the decisions is no
simple matter". He believed the "law of privacy
comprises four distinct kinds of invasion of four
different interests of the plaintiff". 48 Cal L Rev
386, 389.

It was these four interests that were noted by
the Court of Appeals. Our Court's attention is
focused on the second: "public disclosure of embar-
rassing private facts about the plaintiff". Prosser
said this is the interest with which Warren and
Brandeis were primarily concerned. He said
"[s]ome limits, at least, * * * appear to be fairly
well marked out".

First, "the disclosure of the private facts must
be a public disclosure, and not a private one".
Publicity is required. For example, if plaintiff does
not pay a debt, it is not an invasion of privacy to
tell his employer or other individual, or even a
small group.

Second, "the facts disclosed to the public must
be private facts, and not public ones". For exam-
ple, "no one can complain when publicity is given
to information about him which he himself leaves
open to the public eye, such as the appearance of
the house in which he lives, or to the business in
which he is engaged".

Third, "the matter made public must be one which would be offensive and objectionable to a reasonable man of ordinary sensibilities". The law of privacy does not protect "any shrinking soul who is abnormally sensitive about" normal publicity. It does offer protection "when the details of sexual relations are spread before the public gaze, or there is highly personal portrayal of [the person's] intimate private characteristics or conduct".

Although some disagree with Dean Prosser's analysis,[3] it appears to have prevailed to date. Chapter 28A of the Restatement of Torts, 2d, adopts the analysis commenting that the four wrongs relate to each other only in "that each involves interference with the interest of the individual in leading, to some reasonable extent, a secluded and private life, free from the prying eyes, ears and publications of others". 3 Restatement Torts, 2d, § 652A, comment, p 377.

Section 652D reads:

"One who gives publicity to a matter concerning the private life of another is subject to liability to the other for invasion of his privacy, if the matter publicized is of a kind that

"(a) would be highly offensive to a reasonable person, and

"(b) is not of legitimate concern to the public."

Publicity "means that the matter is made public, by communicating it to the public at large, or to so many persons that the matter must be regarded as substantially certain to become one of public knowledge". Matters concerning private life are "the intimate details" such as "[s]exual relations,

---

[3] *See* Bloustein, *Privacy as an Aspect of Human Dignity: An Answer to Dean Prosser,* 39 NYU L Rev 962 (1964).

* * * family quarrels, many unpleasant or disgraceful or humiliating illnesses, most intimate personal letters, most details of a man's life in his home, and some of his past history that he would rather forget". 3 Restatement Torts, 2d, § 652D, comment, pp 384, 386.

### III

In its discussion of the "public disclosure of private facts" issue, the Court of Appeals noted several Michigan cases[4] which "recognize a general requirement of communication to the general public as opposed to a few individuals". The Court said plaintiff made "an insufficient showing of public disclosure". It noted that plaintiff cited "no facts which lead to a reasonable inference that defendants knew or had reason to know the letter would be passed on or even read by anyone other than" the addressee.

In *Miller v Gillespie*, 196 Mich 423; 163 NW 22 (1917), the plaintiff had been wrongly arrested and the case was dismissed. He sued to have the police department destroy information about him in its files. The lower court refused the request and this Court affirmed, noting that this was different than a case where a photograph was displayed in a rogues' gallery. The Court said "the mere preservation in the files of the police department of a report proper to be made in the first instance—a true report" did not publicly expose plaintiff "to ridicule, obloquy or disgrace".

The plaintiff in *Hawley v Professional Credit Bureau Inc*, 345 Mich 500; 76 NW2d 835 (1956),

---

[4] *See* generally Plant, *The Right of Privacy in Michigan*, 33 Mich SBJ 8 (March, 1954), and the opinions in *Weeren v Evening News Association*, 379 Mich 475; 152 NW2d 676 (1967).

had refused to pay a $21.98 storage charge. A
collection agency sent a letter to plaintiff's em-
ployer. Plaintiff said this invaded his privacy but
the Court disagreed saying defendants "gave no
unnecessary publicity to plaintiff's conduct".

In *Reed v Ponton,* 15 Mich App 423; 166 NW2d
629 (1968), the plaintiff said that while in defend-
ant's store with other customers, defendant loudly
accused her of not paying for a coat. The trial
court dismissed a count for invasion of privacy and
the Court of Appeals affirmed. It said "the oral
communication must be broadcast to the public in
general or publicized to a large number of people".

In our case, the Court of Appeals correctly held
that plaintiff failed to show that a public disclo-
sure was made to the public at large. What occur-
red here is not similar to the Restatement exam-
ples: "publication in a newspaper or magazine
* * * or in a handbill distributed to a large num-
ber of persons, or any broadcast over the radio, or
statement made in an address to a large audi-
ence". What occurred here is not similar to the
publicity discussed by Prosser.

Handling of the Zink letter by a secretary in the
recipient's office or even its placement in a file by
the recipient is not "publication" as heretofore
envisioned. Certainly a "leak" through the recipi-
ent's office cannot fairly be attributed to defend-
ants and would not, in any event, be "publicizing"
by defendants.

IV

The Court of Appeals also noted that "the facts
disclosed to the Army Reserve do not seem to be
'private' ones". The facts related "to job perform-
ance, and defendants had a right, if not a duty, to

convey them to the Army". I agree that the facts
are not the types protected by the right to privacy.

The right of privacy has been traced back to *De
May v Roberts,* 46 Mich 160; 9 NW 146 (1881). One
defendant, Dr. De May, had attended the plaintiff
while she was giving birth. To assist him, the
doctor brought "a young, unmarried man, a stran-
ger to plaintiff and utterly ignorant of the practice
of medicine". The house was small (14′ × 16′) and
the young man "could hear at least, if not see all
that was said and done":

"It would be shocking to our sense of right, justice
and propriety to doubt even but that for such an act the
law would afford an ample remedy. To the plaintiff the
occasion was a most sacred one and no one had a right
to intrude unless invited or because of some real and
pressing necessity which it is not pretended existed in
this case. The plaintiff had a legal right to the privacy
of her apartment at such a time, and the law secures to
her this right by requiring others to observe it, and to
abstain from its violation."

Also see *Bradshaw v Michigan National Bank,* 39
Mich App 354; 197 NW2d 531 (1972).

In *Pallas v Crowley, Milner & Co,* 322 Mich 411;
33 NW2d 911 (1948), plaintiff's picture had been
used without her permission for advertising pur-
poses. She said this invaded her "right to be free
from unauthorized and offensive publicity". The
trial court said she failed to state a cause of
action.

We reversed, concluding that "there are circum-
stances under which one may have a right of
privacy in a photographic likeness". There is a
difference between using a photograph "as a part
of a legitimate news item in a newspaper, and its

commercial use in an advertisement for the pecuniary gain of the user".

On remand, there was a verdict of no cause of action. On appeal (334 Mich 282, 285; 54 NW2d 595 [1952]) we affirmed.

"Here action is brought solely for damages claimed to have resulted from invasion of plaintiff's right of privacy. As we held when the case was here before, recovery is dependent upon a showing of an unreasonable and serious interference with that right. Whether a claimed interference therewith is in fact unreasonable or serious may well depend on whether plaintiff had in any particular or degree abandoned her strictly private character and waived to any extent the right to absolute privacy."

Also see *Rice v Winkelman Bros Apparel, Inc,* 13 Mich App 281; 164 NW2d 417 (1968).

The plaintiff in *Earp v Detroit,* 16 Mich App 271; 167 NW2d 841 (1969), was employed by Michigan Bell Telephone. During an interview with Detroit police officers, he admitted conduct which was contrary to company policy. The company received a copy of the report and plaintiff was discharged. He sued saying his right to privacy was invaded. Michigan Bell received a partial summary judgment and plaintiff appealed.

The Court of Appeals, citing 77 CJS, Right of Privacy, § 3, said the right "does not extend so far as to subvert those rights which spring from social conditions, including business relations, or to prohibit the publication of matter which is of public or general interest or benefit". The Court noted that plaintiff had discussed the interview with a supervisor. This "sufficiently apprised Michigan Bell so as to warrant further investigation".

The Court felt Michigan Bell "had the right to

look into what it had been made aware was the possibility of illegal conduct by an employee":

"The information given Bell was not of a private nature. Clearly it was not something one would want to get around but it concerned a matter of public interest. In addition it was not made public or publicized. It was given to Earp's employer and had to do directly with matters of his employment and the use of employer's facilities. Bell had a duty to know if their equipment was being used for criminal activities, to investigate such use and stop it."

Private facts are not all facts one wishes to keep secret. They are facts which are intimate, personal facts which a person may reasonably demand to remain private. Warren and Brandeis spoke of the individual's "private life, habits, acts, and relations". They sought to protect "the privacy of private life". The Restatement spoke of "[s]exual relations, * * * family quarrels, * * * most details of a man's life in his home" and the like.

Plaintiff's conduct and performance on the job are not such private facts. He cannot reasonably demand that his employer suppress an evaluation of his performance. He can only expect that the facts upon which the evaluation is made are accurate. The facts may have been embarrassing but their disclosure did not invade plaintiff's privacy.

If my colleagues determine to expand the present "invasion of privacy" concepts to include personally addressed letters between employers[5] based upon facts assumed[6] to be true, I am persuaded that the precedent will produce more harm than good. Therefore, neither as a matter of law nor as

[5] The same reasoning could apply as between officers within one place of employment.

[6] The facts were found by the hearing officer to be true and to warrant plaintiff's dismissal.

a matter of policy would I join with this expansion of the "invasion of privacy" doctrine to include non-private, job-related behavior about which many were aware and further to expand "publication" to include such "embarrassing," "private" facts stated in a personally addressed letter between employers regarding public employment.

I would affirm the Court of Appeals.

FITZGERALD, J., concurred with COLEMAN, J.