831 F.2d 1064
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Erich PAUL, Plaintiff-Appellee,
v.
AETNA CASUALTY & SURETY COMPANY, Defendant-Appellant.
 No. 86-1808.
 United States Court of Appeals, Sixth Circuit.
 Nov. 2, 1987.
 
 Before BOYCE F. MARTIN, Jr., and DAVID A. NELSON, Circuit Judges, and CONTIE, Senior Circuit Judge.
 PER CURIAM.
 
 
 1
 On April 17, 1986, a jury in the United States District Court for the Eastern District of Michigan found that defendant-appellant Aetna Casualty & Surety Company had committed a breach of its fire insurance contract with plaintiff-appellee Erich Paul, had tortiously invaded Mr. Paul's privacy, and had slandered him. The district court entered judgment on the verdict, awarding Mr. Paul damages in the amount of $107,000 plus prejudgment interest. On appeal Aetna challenges the jury instructions and the sufficiency of the evidence. Finding no error in the proceedings in the district court, we shall affirm the judgment.
 
 
 2
 In December of 1981 Mr. Paul took out an insurance policy under which Aetna insured the Paul home in Davison Township, Michigan, against all direct loss by fire up to the "actual cash value of the property at the time of loss, but not exceeding the amount which it would cost to ... replace the property with material of like kind and quality...." The policy limited coverage for the house, exclusive of contents, to $55,000.
 
 
 3
 On December 27, 1981, at 4:00 p.m., Mr. Paul left his house, locked the doors, and went to his inlaws' home for a holiday dinner. He remained there until late that evening. At 10:53 p.m., the local fire department received a report of a fire at Paul's home. The fire totally destroyed the house.
 
 
 4
 The fire was incendiary in origin. In the course of its investigation Aetna explored Mr. Paul's finances and concluded that their condition, although poor, was not "earth shattering." Aetna then hired a private investigator who spoke with Mr. Paul's neighbors. Two of the neighbors were asked whether they knew that Mr. Paul had been involved in a grand theft auto ring, had committed criminal fraud, had committed arson, was involved in illegal drug trafficking, and had killed a man. One of the neighbors promptly called other neighbors to inquire about these allegations. Mr. Paul had once pleaded guilty to a charge of negligent vehicular homicide, but there was otherwise no foundation whatever for the investigator's representations. At trial, Mr. Paul denied any knowledge of who set the fire.
 
 
 5
 A claims adjuster from Aetna, Deanna Hyde, advised Mr. Paul to claim $56,800.00 as the actual cash value of the house. That amount exceeded the policy limits and Mr. Paul's own estimate ($54,288.00) of the cost of rebuilding. Aetna's initial report after the fire reflected that the value of the house was at least the limit of the policy. Aetna subsequently denied coverage on the grounds that Mr. Paul was responsible for the fire and was thus guilty of trying to defraud the insurance company.
 
 
 6
 Mr. Paul brought suit, and the case proceeded to trial. At the close of the evidence Aetna objected to the court's proposed jury instructions because they failed to include a requested charge that the replacement cost of the home could not be the actual cash value. The jury was told simply that damages were measured by "the actual cash value of the home." The court advised Aetna that it could argue this point to the jury.
 
 
 7
 On Aetna's fraud defense, the court instructed:
 
 
 8
 "The defendant has the burden of proving this by preponderance of the evidence ...."
 
 
 9
 "Fraud is never presumed but must always be proved by preponderance of the evidence. You should assume that humans are fair and honest in their dealings until the contrary appears from the evidence. If a transaction which is called into question is equally capable of two interpretations, one honest and the other fraudulent, it should be found to be honest."
 
 
 10
 Aetna objected to this charge as creating an erroneous presumption of honesty. Lastly, the court charged that to award damages for invasion of privacy the jury would have to find "publication" of private facts in which the public had no legitimate interest. The court declined to charge, as requested by Aetna, that the publication must be to a large number of people.
 
 
 11
 The jury awarded Mr. Paul $55,000 as the value of his house, $17,000 for the contents of the house, $22,500 for invasion of privacy, and $12,500 for slander.
 
 
 12
 In this appeal Aetna reasserts its challenges to the jury instructions and claims that the jury's verdict is not supported by the evidence.
 
 II
 
 13
 Under Michigan law an insurer is not liable under a fire insurance contract if its insured wilfully concealed a material fact or set the fire. Walz v. Peninsular Fire Insurance Co., 221 Mich. 326, 343, 191 N.W. 230 (1922). To establish an arson defense, the insurer need only show that the fire was of incendiary origin and that the insured had both motive and opportunity to set it. George v. Travelers Indemnity Co., 81 Mich. App. 106, 265 N.W.2d 59, 62 (1978). Thus circumstantial evidence is sufficient. Id.
 
 
 14
 Aetna contends that its evidence that Mr. Paul set the fire was overwhelming, but the jury found otherwise and we cannot say that the district court erred in permitting the jury's verdict to stand. Mr. Paul had been away from his house for over six hours when the fire broke out, and he testified that he did not set it. The fire damage was so extensive that it was impossible to establish that the house had not been broken into. By Aetna's own account, Mr. Paul's financial problems were not "earth shattering." The jury could well have found that Mr. Paul was responsible for the fire, to be sure, but it was not required to make such a finding.
 
 
 15
 Aetna contends that the district court erred in creating a legal presumption that Mr. Paul acted honestly. The "presumption," however, was nothing more than an explanation of the preponderance of the evidence standard; the sentence immediately following the challenged one says if the evidence was equally capable of an interpretation in favor of Mr. Paul and in favor of Aetna, the question ought to be decided in favor of Mr. Paul. Aetna had the burden of proving that Mr. Paul acted dishonestly, and we see no reversible error here.
 
 
 16
 As to damages, the contract provided for payment of the actual cash value of the property lost. The policy says that actual cash value shall not be greater than replacement value, but it does not say that actual cash value may not be replacement value. In negligence actions, Michigan appellate courts have held that damages for destruction of property may not be based on replacement cost without any deduction for depreciation, Strzelecki v. Blaser's Lakeside Industries of Rice Lake Inc., 133 Mich. App. 191, 348 N.W.2d 311, 313 (1984); Bluemlein v. Szepanski, 101 Mich. App. 184, 300 N.W.2d 493, 497 (1980), but the case at bar is a contract case, not a negligence case. Here, by contract, the measure of damages was "actual cash value," and there was evidence, consistent with the jury verdict, that the actual cash value was no less than the policy limits. To have instructed the jury, in the face of this evidence, that actual cash value must be less than the replacement cost might well have caused confusion by inviting the jury to disregard the direct evidence that the actual cash value was greater than or equal to the policy limits.
 
 
 17
 Aetna next challenges the verdict as to Mr. Paul's claims of tortious conduct. Michigan recognizes the tort of false light disclosure of private facts. Beaumont v. Brown, 401 Mich. 80, 257 N.W.2d 522, 527 n. 10 (1977). One of the elements of that tort is publicity. Id. In Beaumont, the Michigan Supreme Court rejected the proposition that the publicity must be " 'communication ... to the public in general or ... to a large number of people' or 'communication to the general public as opposed to a few." ' Id. The court held that "unnecessary publicity" was sufficient. Id., 257 N.W.2d at 532. We find no error in the charge on this claim. Aetna denies that it published any fact about Mr. Paul unnecessarily, but there was no reason for the investigator to inform Paul's neighbors that Paul had been involved in the death of another at an earlier time. Moreover, although the investigator spoke only to two people in the neighborhood, one of them contacted other neighbors about the conversation. Such subsequent publication was foreseeable, and the fact of the homicide was clearly published in a false light. The investigator said that Mr. Paul had killed a man, implying that Paul had murdered someone, but there had been no murder. Aetna has not made a viable challenge to the jury verdict on the invasion of Mr. Paul's privacy.
 
 
 18
 As far as Mr. Paul's slander claim is concerned, a defendant can be held vicariously liable for the damages caused by the slanderous actions of its servant, acting within the scope of his employment. Grebner v. Runyon, 132 Mich. App. 327, 347 N.W.2d 741, 744 (1984). The investigator was investigating Mr. Paul on behalf of Aetna. Aetna paid him, and he reported to Aetna. It was not improper for Aetna to be held vicariously liable for the defamation.
 
 
 19
 The judgment is AFFIRMED.