JOHN H. DE MAY AND ALFRED B. SCATTERGOOD v. ALVIRA ROBERTS.

*Intrusion upon case of confinement.*

Where a physician takes an unprofessional unmarried man with him to attend a case of confinement, and no real necessity exists for the latter's assistance, both are liable in damages; and it makes no difference that the patient or husband supposed at the time that the 'intruder was a medical man, and therefore submitted without objection to his presence.

Damages may lie for an injury done, when its full extent is discovered, though long after the act from which it springs.

A physician took an unprofessional friend with him him to attend a case of confinement when there was no emergency requiring the latter's presence. The physician told the patient's husband that he had brought a friend with him to help him carry his things, and he was accordingly admitted. The patient, on afterwards discovering the facts, sued both in damages. *Held*, that the plaintiff and her husband had a right to presume that the outsider was a medical associate; that in obtaining admission without disclosing his true character, the defendants were guilty of deceit; that plaintiff had a right to testify that she had supposed he was a physician or medical student, and also to give evidence of whatever may have been said at the time tending to support such supposition. It was also admissible to ask a competent witness as to the custom among physicians in regard to calling assistance in these cases.

A witness cannot be asked what he stated in an affidavit, but the affidavit itself must be produced.

Error to Gratiot. Submitted April 12. Decided June 8.

Case. Defendants bring error. Affirmed.

*H. & H. E. Walbridge* for plaintiffs in error.

*J. H. Kimball* and *J. K. Wright* for defendant in error.

MARSTON, C. J. The declaration in this case in the first count sets forth that the plaintiff was, at a time and place named, a poor married woman, and being confined in childbed and a stranger, employed in a professional capacity defendant De May who was a physician; that defendant visited the plaintiff as such, and against her desire and intending to deceive her wrongfully, etc., introduced and caused to be present at the house and lying-in room of the plaintiff and while she was in the pains of parturition the defendant Scattergood, who intruded upon the privacy of the plaintiff, indecently, wrongfully and unlawfully laid hands upon and assaulted her, the said Scattergood, which was well known to defendant De May, being a young unmarried man, a stranger to the plaintiff and utterly ignorant of the practice of medicine, while the plaintiff believed that he was an assistant physician, a competent and proper person to be present and to aid her in her extremity.

The second and third counts while differing in form set forth a similar cause of action.

The evidence on the part of the plaintiff tended to prove the allegations of the declaration. On the part of the defendants evidence was given tending to prove that Scattergood very reluctantly accompanied Dr. De May at the urgent request of the latter; that the night was a dark and stormy one, the roads over which they had to travel in getting to the house of the plaintiff were so bad that a horse could not be ridden or driven over them; that the doctor was sick and very much fatigued from overwork, and therefore asked the defendant Scattergood to accompany and assist him in carrying a lantern, umbrella and certain articles deemed necessary upon such occasions; that upon arriving at the house of the plaintiff the doctor knocked, and when the door was opened by the husband of the plaintiff, De May said to him, "that I had fetched a friend along to help carry my things;" he, plaintiff's husband, said "all right," and seemed to be perfectly satisfied. They were bidden to enter, treated kindly and no objection whatever made to the presence of defendant Scattergood. That while there Scattergood, at Dr. De May's request, took hold of plaintiff's hand and held her during a paroxysm of pain, and that both of the defendants in all respects throughout acted in a proper and becoming manner actuated by a sense of duty and kindness.

Some preliminary questions were raised during the progress of the trial which may first be considered.

The plaintiff when examined as a witness was asked, what idea she entertained in reference to Scattergood's character and right to be in the house during the time he was there, and answered that she thought he was a student or a physician. To this there could be no good legal objection. It was not only important to know the character in which Scattergood went there, but to learn what knowledge the plaintiff had upon that subject. It was not claimed that the plaintiff or her husband, who were strangers in that vicinity, had ever met Scattergood before this time or had any knowledge or information concerning him beyond what they obtained on that evening, and it was claimed by the

defendant that both the plaintiff and her husband must have known, from certain ambiguous expressions used, that he was not a physician.

We are of opinion that the plaintiff and her husband had a right to presume that a practicing physician would not, upon an occasion of that character, take with him and introduce into the house, a young man in no way, either by education or otherwise, connected with the medical profession; and that something more clear and certain as to his non-professional character would be required to put the plaintiff and her husband upon their guard, or remove such presumption, than the remark made by De May that he had brought a friend along to help carry his things. The plaintiff was not bound however to rest her case upon this presumption, however strong it might be considered, but had a right to prove what she supposed was the fact, and this she could do by showing anything said at the time having such a tendency, or in the absence thereof what she actually believed to be the fact.

The question asked the plaintiff's husband as to what he had stated under oath in an affidavit was properly overruled. This court has repeatedly pointed out the proper practice in such cases. *Hamilton v. The People* 29 Mich. 198, and cases cited.

The question asked the witness Dr. Monfort* as to the custom among physicians in such cases as to calling assistance was not objectionable; besides, the answer given could in no way have injured the defendants. In either event therefore they cannot complain.

It yet remains to consider the principal questions raised in the case. They relate to the sufficiency of the declaration, to which the general issue was pleaded, and farther that

---

*The testimony of Dr. Monfort was as follows: *Question.* "You say you have been in practice about eight years; what is the custom among physicians called upon to do the necessary duties attending cases of midwifery in reference to calling in assistance? *Answer.* I suppose that would depend somewhat upon the circumstances under which the case existed; usually it is not the custom to have assistance, unless the case demands it; after it is ascertained that assistance is required, it is customary and proper to call medical assistance; in an urgent case, perhaps most any kind of assistance; but medical if it could be obtained."

admitting the facts to be true as claimed by the plaintiff she was not entitled to recover. We need not consider the question as to what the effect would be had the jury found that the plaintiff knew the non-professional character of the defendant Scattergood and made no objection or consented to his remaining in the house or rendering such assistance as was demanded. Upon this branch of the case the court charged the defendants would be justified in doing what they did, if the plaintiff or her husband consented to Scattergood being there, with a full understanding of, or with good reason to believe or know of the character in which he was there. This certainly was placing the matter in a sufficiently favorable position for the defendants.

A few facts which were undisputed may assist in more clearly presenting the remaining question. Upon the morning of January 3d Dr. De May was called to visit the plaintiff professionally which he did at her house. This house was fourteen by sixteen feet. A partition ran partly across one end thus forming a place for a bed or bedroom, but there was no door to this bedroom. Next to this so-called bedroom, and between the partition and side of the house, there was what is known and designated as a bed sink; here there was a bed with a curtain in front of it, and it was in this bed the doctor found Mrs. Roberts when he made his first visit. On their way to the house that night De May told Scattergood, who knew that the plaintiff was about to be confined, "how the house was; that she was in the bed sink back, and there was a curtain in front of her, and told him he need not see her at all." When the defendants got to the house they found Mrs. Roberts "had moved from the bed sink and was lying on the lounge near the stove."

I now quote farther from the testimony of Dr. De May as to what took place:

"I made an examination of Mrs. Roberts and found no symptoms of labor at all, any more than there was the previous morning. I told them that I had been up several nights and was tired and would like to lie down awhile; previous to this, however, some one spoke about supper, and supper was got and Scattergood and myself

eat supper, and then went to bed. I took off my pants and had them hung up by the stove to dry; Scattergood also laid down with his clothes on. We lay there an hour or more, and Scattergood shook me and informed me that they had called and wanted me. Scattergood got my pants and then went and sat down by the stove and placed his feet on a pile of wood that lay beside the stove, with his face towards the wall of the house and his back partially toward the couch on which Mrs. Roberts was lying. I made an examination and found that the lady was having labor pains. Her husband stood at her head to assist her; Mrs. Parks upon one side, and I went to the foot of the couch. During her pains Mrs. Roberts had kicked Mrs. Parks in the pit of the stomach, and Mrs. Parks got up and went out doors, and while away and about the time she was coming in, Mrs. Roberts was subjected to another labor pain and commenced rocking herself and throwing her arms, and I said " catch her," to Scattergood, and he jumped right up and came over to her and caught her by the hand and staid there a short time, and then Mrs. Parks came up and took her place again, and Scattergood got up and went and took his place again, back by the stove. In a short time the child was born. Scattergood took no notice of her while sitting by the stove. The child was properly cared for; Mrs. Roberts was properly cared for, dressed and carried and placed in bed. I left some medicine to be given her in case she should suffer from pains."

Dr. De May therefore took an unprofessional young unmarried man with him, introduced and permitted him to remain in the house of the plaintiff, when it was apparent that he could hear at least, if not see all that was said and done, and as the jury must have found, under the instructions given, without either the plaintiff or her husband having any knowledge or reason to believe the true character of such third party. It would be shocking to our sense of right, justice and propriety to doubt even but that for such an act the law would afford an ample remedy. To the plaintiff the occasion was a most sacred one and no one had a right to intrude unless invited or because of some real and pressing necessity which it is not pretended existed in this case. The plaintiff had a legal right to the privacy of her apartment at such a time, and the law secures to her this right by requiring others to observe it, and to abstain from

its violation. The fact that at the time, she consented to the presence of Scattergood supposing him to be a physician, does not preclude her from maintaining an action and recovering substantial damages upon afterwards ascertaining his true character. In obtaining admission at such a time and under such circumstances without fully disclosing his true character, both parties were guilty of deceit, and the wrong thus done entitles the injured party to recover the damages afterwards sustained, from shame and mortification upon discovering the true character of the defendants.

Where a wrong has been done another, the law gives a remedy, and although the full extent and character of the injury done may not be ascertained or known until long after, yet in an action brought damages therefor may be fully awarded. This is true both in cases of tort and crime as well as in actions for breach of contract. The charge of the court upon the duty and liability of the defendants and the rights of the plaintiff was full and clear, and meets with our full approval.

It follows therefore that the judgment must be affirmed with costs.

The other Justices concurred.