William A. KNIGHT, Jr., and
Kathleen Knight

v.

**PENOBSCOT BAY MEDICAL CENTER,**
Sandra Robie, Theodore Robie and
Albert J. Lantinen, Jr.

Supreme Judicial Court of Maine.

Argued June 20, 1980.

Decided Oct. 6, 1980.

Eaton, Glass & Marsano, Francis C. Marsano (orally), Belfast for plaintiff.

Weeks, Hutchins, Frye & Welch, Roger A. Welch (orally), Waterville, for Lantinen.

Gross, Minsky, Mogul & Singal, P. A., Jules L. Mogul, Nathan Dane, III (orally), Bangor, for Penobscot Bay Med. Center.

Richardson, Tyler & Troubh, S. Peter Mills, (orally), Portland, for Sanera and Theodore Robie.

Before McKUSICK, C. J., and WERNICK, GODFREY, GLASSMAN and ROBERTS, JJ.

WERNICK, Justice.

Plaintiffs William and Kathleen Knight, husband and wife, have appealed from a judgment of the Superior Court (Waldo County) entered on a jury verdict finding that none of the defendants (Penobscot Bay Medical Center, Sandra Robie, Theodore Robie and Albert J. Lantinen, Jr.) had invaded "privacy" rights of, or engaged in "outrageous" conduct causing severe emotional distress to, either of the plaintiffs. The appeals are taken from only that part of the judgment denying the claimed invasion of privacy. Two points are raised, each directed to an allegedly erroneous instruction to the jury by the presiding justice.

We deny the appeals and affirm the Superior Court judgment.

Late in the morning of January 8, 1977, plaintiff Kathleen Knight, expecting to give birth, was admitted to the defendant hospital (Pen Bay). Kathleen had been accompanied by her husband, who left after she had been admitted. Two doctors were caring for Kathleen during her pregnancy, one of whom, the defendant Albert J. Lantinen, Jr., was on duty at the hospital when Kathleen was admitted. Another of the defendants, Sandra Robie, a registered nurse, was also there, on duty. She had completed her regular shift but was obliged to remain on duty because a severe snowstorm had delayed the arrival of the nurse who had the next duty.

Nurse Robie's husband, the defendant Theodore Robie, anticipating that his wife would leave the hospital at the end of her regular shift, had come to the hospital to meet her and take her home. When he learned that she would be detained, he decided to stay at the hospital until she finished her work. To give her husband something interesting to do while he was waiting for her, Nurse Robie asked Dr. Lantinen for permission to have her husband witness a birth. Dr. Lantinen had two patients waiting to give birth, a Mrs. Allen and the plaintiff, Kathleen Knight. Having sought, and obtained, the permission of Mrs. Allen for Mr. Robie to observe her giving birth, Dr. Lantinen told Mr. Robie that he could observe Mrs. Allen's delivery.[1]

Mrs. Allen's pregnancy had been difficult. As the time approached for her to deliver, Dr. Lantinen realized that he would face complications. He decided that it would be better to have Mr. Robie witness a normal birth, and so he stationed Mr. Robie, who had put on hospital attire, where he could watch Kathleen Knight instead of Mrs. Allen.

Mr. Robie stood behind a viewing window in the surgical corridor, approximately twelve feet from the delivery table. From where he stood, Mr. Robie had a side view of Mrs. Knight's body, and her body was entirely covered by draping, except for her face and hands. Hence, Mr. Robie did not witness the actual process of delivering; what he saw was the baby being lifted up and then being placed on the mother's abdomen.

Meanwhile, Mr. Knight had returned to the hospital at about 5:00 p. m., and he then had someone call the delivery area. Kathleen was informed by Nurse Robie that Mr. Knight had returned to the hospital, and she requested that her husband come to the delivery room. Nurse Robie arranged for Mr. Knight to come to the delivery area.

1. Dr. Lantinen had spent the previous four years, until about six months before the date in question, as an obstetrical resident at a teaching hospital in Columbus, Ohio, where people routinely viewed deliveries.

When he arrived there, Nurse Robie assisted him in putting on hospital attire and then brought him into the delivery room. Both Mr. and Mrs. Knight were positioned where they could see Mr. Robie observing through the window.

Dr. Lantinen had arranged for Nurse Robie, the more experienced nurse, to be with Mrs. Knight while he and Debra Strout, a licensed practical nurse, stayed with Mrs. Allen. Dr. Lantinen thought Mrs. Allen would deliver before Kathleen Knight, but Kathleen did the unexpected and began to deliver at the same time as Mrs. Allen. Nurse Robie asked Mr. Knight to go to the next room and ask Dr. Lantinen to attend to Kathleen. For some reason, Mr. Knight was unable to comply, so Nurse Robie motioned to her husband observing at the window and said something to him about going to get the doctor.[2] Dr. Lantinen came in and took over for Nurse Robie. Kathleen Knight gave birth, uneventfully, to a healthy baby girl who was normal in all respects.

Both Mr. and Mrs. Robie testified that they believed that Mr. Robie's presence had been authorized, that they were entirely unaware that his presence in the surgical corridor was offensive or intrusive to either patient, and that they had no intent to intrude. Similarly, Dr. Lantinen testified that he had no intention to "intrude upon anyone's privacy." During her stay in the hospital, Kathleen Knight never expressed any concern about Fred Robie's having been present at the window in the delivery area.

*1.*

Plaintiff's first point on appeal is that the presiding justice erred in failing to give one of several instructions plaintiffs had requested be given.[3] We reject this contention.

2. The two nurses and Dr. Lantinen were the only people on duty in the delivery area at the time. It was undisputed that this was adequate staffing.

3. The requested instruction at issue (numbered 8 among those plaintiffs requested) was the following:
"8. The occasion of the birth of a child is one of the most sacred in our society and no one has the right to intrude unless invited or

The extent to which the law of Maine holds conduct tortious as an invasion of "privacy" is set forth in the cases of *Estate of Berthiaume v. Pratt,* Me., 365 A.2d 792 (1976) and *Nelson v. Maine Times,* Me., 373 A.2d 1221 (1977); *see Equifax Services, Inc., et al v. Cohen, Attorney General,* Me., 420 A.2d 189 (1980). Within the formulation enunciated in these cases, the "privacy" interest asserted in the case at bar is the same as was involved in *Berthiaume v. Pratt, supra :* the interest that one's solitude or seclusion be protected against particular kinds of intrusion. The kind of intrusion on seclusion that is tortious is described in *Nelson v. Maine Times, supra,* at 1223, quoting from Restatement (Second), Torts § 652B, as follows:

"One who *intentionally* intrudes, physically or otherwise, upon the solitude or seclusion of another or his private . . . concerns, is subject to liability to the other for invasion of his privacy, *if* the intrusion would be *highly offensive to a reasonable person.*" (emphasis added)

■ Here, the presiding justice used this language in instructing the jury. He thus formulated for the jury the elements, under the law of Maine, of the tort of invasion of privacy that is involved in this case. In concluding, as he did, that further amplification focusing upon particular factual aspects of the case was unnecessary, or might risk improperly influencing the jury in its function as factfinder, the presiding justice acted within the proper bounds of discretion. *See Desmond v. Wilson,* 143 Me. 262, 268, 60 A.2d 782, 785 (1948).

More specifically, the justice acted correctly in refusing to instruct in accordance with plaintiffs' requested instruction #8 because it was erroneous in three respects.

because of some real and pressing necessity. There is no pretense that such a necessity existed in this case. Mrs. Knight had a legal right to the privacy of the delivery room at such a time and the law secured this to her and to her husband after he joined her and the law requires others to observe it and to abstain from its violation. *Demay v. Roberts,* 46 Mich. 160 [9 N.W. 146] (1881)."

First, it failed to refer to the essential element that the defendant must *intend* as the result of his conduct that there be an intrusion upon another's solitude or seclusion.

Second, in reference to whether Mr. Robie's presence in the delivery area was "unnecessary" to serve the functional purpose involved, requested instruction #8 was couched in the language of a case decided almost a century ago.[4] It erroneously stated that Mr. Robie's "unnecessary" presence in the delivery area was *sufficient, without more,* to establish *as a matter of law* that Mr. Robie had unlawfully intruded upon the plaintiffs' interest in seclusion.

Third, requested instruction #8 failed to differentiate between Kathleen Knight's interest in solitude or seclusion while giving birth and her husband's separate interest as arising from his being present at the time of birth. Since the interest in solitude or seclusion is protected as a *personal* interest, Mr. Knight could not properly claim an invasion of his separate personal interest merely because he was Kathleen Knight's husband. *See Nelson v. Maine Times, supra,* at 1225. Thus, for example, if plaintiff Kathleen Knight had consented to the presence of Mr. Robie, it would be open to serious question whether it was also necessary to procure her husband's consent, even if it could be anticipated that he might be present in the delivery room. To focus upon this issue in yet another way, suppose that the third person "unnecessarily" present in the delivery area was unable to see Mrs. Knight but could see only her husband's reaction as he observed the delivery. Could it fairly be said that the fact alone of another person's "unnecessary" presence was enough to establish as a matter of law that the husband's interest in being secluded at that time had been tortiously violated? Rather, would it not be that, at best, the issue is a question of fact, to be resolved in light of *all* the circumstances, more particularly because it is an essential element of the tort that the intrusion be such as would be "highly offensive to a reasonable person?"

Plaintiffs claim to find support for the position they urge in language appearing in *People v. Brown,* 88 Cal.App.3d 283, 151 Cal.Rptr. 749 (1979). That case, however, did not involve a delivery room situation and did not purport to delineate the appropriate instructions to be given the jury in a suit for tortious invasion of privacy. Rather, the court was simply attempting to furnish background for a decision that the court itself emphasized was strictly confined to the particular circumstances presented, i. e., that

"no Fourth Amendment violation occurs when a nurse permits an officer to enter a sentient patient's hospital room for purposes unrelated to a search, the patient does not object to the visit, and the officer sees evidence in plain sight." *Id.,* 151 Cal.Rptr. at 755.

Here, the jury had before it testimony concerning such relevant factors as the agency relationships and scopes of authority of the various defendants, the location of the observer, Mr. Robie, relative to the plaintiffs, what was visible in the delivery room during the time Mr. Robie was observing it, the intentions of the participants and so forth. Hence, the presiding justice acted correctly in leaving for jury determination whether in light of all the circumstances any of the defendants had intentionally intruded on the solitude, or seclusion, of either of the plaintiffs in a manner highly offensive to a reasonable person.

*2.*

Plaintiffs' other point on appeal is that the presiding justice should have read Section 652B of the Restatement, including Comment b appearing under that section, as part of the supplemental instructions he gave to the jury. When this suggestion

---

**4.** The language was from the case of *DeMay v. Roberts, supra,* n.3, decided even prior to the celebrated law review article of Brandeis and Warren, identifying "privacy" as an interest protected by law, at least in some of its aspects. L. Brandeis and S. Warren, "The Right to Privacy", 4 Harv.L.Rev. 193 (1890).

was made to him, the justice rejected it on the ground that the information contained in the Comment was not pertinent to the subject matter referred to in the jury's questions asking for further instructions.

This conclusion by the presiding justice was correct. If the justice would not have been in error had he chosen to read to the jury the text of Section 652B, neither was he in error in deciding to explain the substance of the Restatement text, as he did adequately, without using its exact language.

### 3.

 Plaintiffs' arguments on appeal seem to intimate that the trial court erred in its supplemental charge on the subject of damages. To the extent that such a contention is being made, we point out that the suggested error has not been preserved for appellate cognizance in ordinary course. Plaintiffs did not specifically object to the instructions on damages, as was required of them by Rule 51(b) M.R.Civ.P.

In any event, plaintiff gains nothing even if we proceed on an assumption that in civil cases errors in instructions prejudicing substantial rights may be noticed on appeal under Rule 51, *see* 9 C. Wright and A. Miller, *Federal Practice and Procedure* § 2558 at n.40–41 (1971), and cases cited therein.

The infirmity intimated by plaintiffs is that in his supplemental instructions as to damages, the justice did not specifically instruct about "presumed" or "nominal" damages, *see, e. g., Monroe v. Darr,* 221 Kan. 281, 559 P.2d 322, 327 (1977); *Birnbaum v. United States,* 588 F.2d 319, 333–35 (2nd Cir. 1978); *Trevino v. Southwestern Bell Tel. Co.,* 582 S.W.2d 582, 584–85 (Tex.Civ. App.1979). In the "obvious error" context in which alone we may take cognizance, here, of this alleged error we must conclude that it falls far short of being the kind of error, "exceptional" in an action civil in nature, that has "seriously affected the fairness, integrity, or public reputation . . ." of the proceeding. *See Morris v. Travisono,* 528 F.2d 856, 859 (1st Cir.1976). More particularly is this so in the present situation where, as counsel for defendant Lantinen has argued to us, it may well have been the tactical choice of plaintiffs' counsel to avoid an instruction on "presumed" damages, whether as "nominal" or otherwise, because he wanted the jury to think only in terms of a large award of damages.

The entry shall be:

Appeal denied; the judgment of the Superior Court is affirmed.

All concurring.