*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

AVA CETERA, JULIAN CETERA, and CETERA
PHOTOGRAPHY, LLC,

        Plaintiffs-Appellants,

v

LAUREN MILETO,

        Defendant-Appellee.

FOR PUBLICATION
July 28, 2022
9:05 a.m.

No. 356868
Eaton Circuit Court
LC No. 2020-001040-NZ

Before: MARKEY, P.J., and BOONSTRA and RIORDAN, JJ.

MARKEY, P.J.

Plaintiffs, Ava Cetera, Julian Cetera, and Cetera Photography, LLC (collectively "Cetera"), appeal by right the trial court's order granting summary disposition in favor of defendant, Lauren Mileto, pursuant to MCR 2.116(C)(8) and (10) in this lawsuit involving claims of defamation per se and false-light invasion of privacy (FLIOP). We affirm.

## I. BACKGROUND

In the fall of 2019, Mileto was engaged to be married and was planning her wedding. The wedding was initially scheduled to take place in October 2020, and Mileto booked Cetera in November 2019 to be her wedding photographer. Mileto paid Cetera $2,120 for photography services that were to be provided for the planned October 2020 nuptials. The parties agreed that this payment was nonrefundable. During the summer of 2020, Mileto and her fiancé decided to postpone their wedding until October 2021 in light of the ongoing COVID-19 pandemic. On July 29, 2020, Mileto sent an e-mail to various vendors, including Cetera, informing them that the wedding had been postponed and inquiring whether they could provide their services on the new date. In this e-mail, Mileto explained why she still desired their services:

> I wanted to contact you all because you are what make our wedding a dream
> wedding! We picked you as our vendors because you are the best at what you do,
> the kindest people, and we couldn't imagine not having you all at our celebration!

-1-

Cetera informed Mileto that it was not available to photograph the wedding on the new date. After some discussion of alternative dates that ultimately were not workable, the parties agreed to terminate their agreement, and Cetera refunded $704 to Mileto. Shortly thereafter, Mileto posted the following review of Cetera's services both on Facebook and on a website called "The Knot:"

I would not recommend Cetera Photography for any couples.

To begin, they don't list their prices and instead just ask what you're willing to pay and then tailor their price around that, which doesn't seem right to me.

Secondly, after booking them, I mentioned that I had a Pinterest board of poses that I'd love to share with them and they completely freaked out. They were so offended that I had looked at different photography ideas that we ended up having an hour discussion about it before the issue was resolved and I said they didn't have to take my Pinterest into consideration.

Thirdly, they asked us to review them before they provided us any services. They practically insisted we do it, continually asking if it was done yet. That is actually why you see all their Facebook reviews that say people are excited to work with them, but most haven't yet.

Finally, we had to move our wedding because of COVID and that neither of our grandparents were comfortable coming this year (which is very important to us that they are there). When we expressed this to Ava and Julian [Cetera], they insisted that we should have it anyway because "that's what other people are doing." When we said it was a definite no and moving to next year, they offered us 2 slots they had available next year (at very random times of the year) of which we couldn't do either. I am in grad school and can only do weekends we have breaks. When we said we couldn't do those weekends, they told us since we were being inflexible and couldn't work with their dates, we didn't get any of our money back. Which was over $2,000. They were actually so rude to me that they made me cry on the phone.

Overall, they were very rude and unaccommodating. It doesn't seem like they want the best for you & want to get photos that YOU are happy with, they want what works for them. I think there are plenty of other photographers that are more willing to work with you for the same or a cheaper price. I would not recommend Cetera photography to anyone.

Ten days later, Cetera's attorney sent a letter to Mileto in which he requested that Mileto withdraw the "defamatory posts." Mileto edited the review to indicate that she had, in fact, received a partial refund, but Mileto otherwise refused to withdraw the posts. Cetera then sued Mileto, alleging counts of defamation per se, exemplary damages, and FLIOP. Subsequently, the trial court granted Mileto's motion for summary disposition under MCR 2.116(C)(8) and (10).

II. ANALYSIS

A.  STANDARD OF REVIEW AND SUMMARY DISPOSITION PRINCIPLES

This Court reviews de novo a trial court's ruling on a motion for summary disposition.  *El-Khalil v Oakwood Healthcare, Inc*, 504 Mich 152, 159; 934 NW2d 665 (2019).  We also review de novo questions concerning the interpretation and application of a statute.  *Estes v Titus*, 481 Mich 573, 578-579; 751 NW2d 493 (2008).  This Court likewise reviews de novo the issue whether a privilege exists in connection with a defamation claim.  *Prysak v R L Polk Co*, 193 Mich App 1, 15; 483 NW2d 629 (1992).

MCR 2.116(C)(8) provides for summary disposition when a "party has failed to state a claim on which relief can be granted."  A motion under subrule (C)(8) tests the legal sufficiency of a complaint.  *Ass'n of Home Help Care Agencies v Dep't of Health & Human Servs*, 334 Mich App 674, 684 n 4; 965 NW2d 707 (2020).  A trial court is only permitted to consider the pleadings when deciding a motion under MCR 2.116(C)(8).  *Id.*  All of the factual allegations contained in the complaint must be accepted as true.  *Id.*  And if no factual development could possibly justify recovery, the trial court should grant the motion.  *Id.*

MCR 2.116(C)(10) provides for summary disposition when, "[e]xcept as to the amount of damages, there is no genuine issue as to any material fact, and the moving party is entitled to judgment or partial judgment as a matter of law."  A motion under subrule (C)(10) tests the factual support for a party's cause of action.  *Ass'n of Home Help Care Agencies*, 334 Mich App at 684 n 4.  When judgment is sought on the basis of MCR 2.116(C)(10), "[a]ffidavits, depositions, admissions, or other documentary evidence . . . are required[.]"  MCR 2.116(G)(3)(b).  "When a motion under subrule (C)(10) is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of his or her pleading, but must, by affidavits or as otherwise provided in this rule, set forth specific facts showing that there is a genuine issue for trial."  MCR 2.116(G)(4).

A trial court may grant a motion for summary disposition under MCR 2.116(C)(10) if the pleadings, affidavits, and other documentary evidence, when viewed in a light most favorable to the nonmoving party, demonstrate that there is no genuine issue with respect to any material fact.  *Ass'n of Home Help Care Agencies*, 334 Mich App at 684 n 4.  "A genuine issue of material fact exists when the record, giving the benefit of reasonable doubt to the opposing party, leaves open an issue upon which reasonable minds might differ."  *West v Gen Motors Corp*, 469 Mich 177, 183; 665 NW2d 468 (2003).  A trial court may not assess credibility, weigh the evidence, or resolve factual disputes, and when material evidence conflicts, it is not appropriate for the court to grant the motion for summary disposition.  *Ass'n of Home Help Care Agencies*, 334 Mich App at 684 n 4.  "Like the trial court's inquiry, when an appellate court reviews a motion for summary disposition, it makes all legitimate inferences in favor of the nonmoving party."  *Skinner v Square D Co*, 445 Mich 153, 162; 516 NW2d 475 (1994).  "Affidavits, depositions, admissions, and documentary evidence offered in support of or in opposition to a motion . . . shall only be considered to the extent that the content or substance would be admissible as evidence to establish or deny the grounds stated in the motion."  MCR 2.116(G)(6); see also *Maiden v Rozwood*, 461 Mich 109, 121; 597 NW2d 817 (1999) (a court may only consider substantively admissible evidence actually proffered by the parties when ruling on a motion).

## B. STATUTORY CONSTRUCTION

In *Slis v Michigan*, 332 Mich App 312, 335-336, 956 NW2d 569 (2020), this Court recited the well-established principles governing statutory construction, observing as follows:

> This Court's role in construing statutory language is to discern and ascertain the intent of the Legislature, which may reasonably be inferred from the words in the statute. We must focus our analysis on the express language of the statute because it offers the most reliable evidence of legislative intent. When statutory language is clear and unambiguous, we must apply the statute as written. A court is not permitted to read anything into an unambiguous statute that is not within the manifest intent of the Legislature. Furthermore, this Court may not rewrite the plain statutory language or substitute its own policy decisions for those decisions already made by the Legislature.

## C. DISCUSSION OF DEFAMATION PER SE AND RESOLUTION

In an extensive written opinion, the trial court summarily dismissed Cetera's claim of defamation per se on the basis that Mileto's various statements within her postings were either opinion, true, or not defamatory. The court also ruled as a matter of law that Mileto did not act with malice; therefore, Mileto was shielded from liability by qualified immunity. The trial court further concluded that there could be no defamation per se because Mileto's statements did not accuse Cetera of committing a crime or impute a lack of chastity.

The elements that must be established to sustain a defamation claim are (1) a false and defamatory statement regarding the plaintiff, (2) a communication to a third party that is not privileged, (3) fault on the part of the publisher that amounts to at least negligence, and (4) either special harm caused by the publication or actionability of the statement regardless of special harm, otherwise known as defamation per se. *Smith v Anonymous Joint Enterprise*, 487 Mich 102, 113; 793 NW2d 533 (2010).

Pursuant to 1961 PA 236, the Michigan Legislature enacted the Revised Judicature Act of 1961 (RJA), MCL 600.101 *et seq.* As part of that same legislation—1961 PA 236, MCL 600.2911 was enacted, addressing actions for libel and slander.[1] MCL 600.2911, as amended by 1988 PA 396, provides, in pertinent part:

> (1) Words imputing a lack of chastity to any female or male are actionable in themselves and subject the person who uttered or published them to a civil action for the slander in the same manner as the uttering or publishing of words imputing the commission of a criminal offense.

---

[1] As will be elaborated on later in this opinion, earlier Michigan statutes regarding libel and slander can be traced back to the nineteenth century.

-4-

(2)(a) Except as provided in subdivision (b), in actions based on libel or slander the plaintiff is entitled to recover only for the actual damages which he or she has suffered in respect to his or her property, business, trade, profession, occupation, or feelings.

(b) Exemplary and punitive damages shall not be recovered in actions for libel unless the plaintiff, before instituting his or her action, gives notice to the defendant to publish a retraction and allows a reasonable time to do so, and proof of the publication or correction shall be admissible in evidence under a denial on the question of the good faith of the defendant, and in mitigation and reduction of exemplary or punitive damages. . . . .

"MCL 600.2911(1) is the codification of the common-law principle that words imputing a lack of chastity or the commission of a crime constitute *defamation per se* and are actionable even in the absence of an ability to prove actual or special damages . . . ." *Burden v Elias Bros Big Boy Restaurants*, 240 Mich App 723, 728; 613 NW2d 378 (2000) (emphasis added). "Where defamation per se has occurred, the person defamed is entitled to recover general damages in at least a nominal amount." *Id.* (citations omitted). With respect to defamation per se, the presumption of general damages is well settled in Michigan jurisprudence. *Id.* And a civil action can proceed despite the lack of any proof of actual or special damages. *Id.* at 728-729. "Accordingly, where a plaintiff brings an action alleging words imputing lack of chastity or commission of a crime under MCL 600.2911(1), the inability to prove damages is not fatal to the claim." *Id.* at 729. The *Burden* panel did not indicate, recognize, or suggest that false and defamatory statements concerning a business constitute defamation per se.

Count I of Cetera's complaint alleged defamation per se in relation to its business operations. On appeal, Cetera challenges the trial court's ruling that a false and defamatory statement about a party's business, profession, or employment does not constitute defamation per se. Cetera argues that such statements are defamatory per se. We note that Cetera does not argue on appeal that it suffered actual financial or business losses, i.e., special harm, due to Mileto's postings; therefore, if there is no defamation per se, the defamation claim necessarily fails. In support of its position that this case involves defamation per se, Cetera cites *Heritage Optical Ctr, Inc v Levine*, 137 Mich App 793, 797; 359 NW2d 210 (1984) ("[f]alse and malicious statements injurious to a person in his or her business are actionable per se, and special damages need not be alleged or proved"). Cetera also relies on *Croton v Gillis*, 104 Mich App 104, 108-109; 304 NW2d 820 (1981) ("slander per se exists where the words are spoken of and concerning the person's profession and employment"). Finally, Cetera favorably cites *Henkle v Schaub*, 94 Mich 542, 548; 54 NW 293 (1893) ("Words, spoken or written, injurious to a person in his business, which are false and malicious, are actionable per se, and special damages need not be alleged or proved.").

MCL 600.2911(1) only recognizes statements imputing criminal conduct and lack of chastity as constituting defamation per se. There is no mention of statements that concern a party's business, profession, or employment. Moreover, MCL 600.2911(2)(a) expressly states that "actual damages" must be alleged and proven when a defamation claim pertains to a person's "property, business, trade, profession, occupation, or feelings." The Legislature plainly and unambiguously intended that actions for "defamation per se" be limited to those in which the false and defamatory statements regard criminality and lack of chastity. With respect to *Heritage Optical* and *Croton*,

-5-

they were decided before November 1, 1990; consequently, they are not binding on this panel. MCR 7.215(J)(1). Moreover, neither *Heritage Optical* nor *Croton* made any mention of MCL 600.2911, even though the statute had been enacted in 1961.[2]

The *Heritage Optical* and *Croton* panels both relied on our Supreme Court's decision in *Henkel*. *Heritage Optical*, 137 Mich App at 797; *Croton*, 104 Mich App at 108-109. At the time that *Henkel* was issued in 1893, the libel statute, 1885 PA 233, pertained solely to newspaper publications, appeared to implicitly indicate that false and defamatory statements about criminal activity constituted defamation per se, and, with some exceptions, only allowed recovery for actual damages suffered in regard to property, business, trade, profession, or occupation. *Henkel* involved slander and was wholly unrelated to any newspaper publication. And the Supreme Court did not reference any statutory provision but instead relied on the common law to rule that special damages need not be proven when false and defamatory statements about a business are at issue. *Henkel*, 94 Mich at 548, citing *Oliver v Perkins*, 92 Mich 304; 52 NW 609 (1892); *Haney Mfg Co v Perkins*, 78 Mich 1; 43 NW 1073 (1889).

After *Henkel* was decided, the Legislature enacted 1895 PA 216, extensively amending 1885 PA 233 such that the new statute encompassed libel and slander generally and provided in subsection 1 as follows:

> *The People of the State of Michigan enact*, That in suits brought for the recovery of damages for libel or slander in this state, the plaintiff shall be entitled to recover only such actual damages as he may have suffered in respect to his property, business, trade, profession, occupation or feelings. [1897 CL 10423.]

1895 PA 216 did not state that any particular slanderous or libelous statement constituted defamation per se, but the "actual damages" language expressly indicated that special harm was necessary when suing in regard to a false and defamatory statement about a person's business. In *Derham v Derham*, 123 Mich 451, 455; 82 NW 218 (1900), there was no proof that actual damages were sustained in regard to the plaintiff's property, business, trade, profession, or occupation as the result of alleged defamatory statements, and the Michigan Supreme Court, citing subsection 1 of 1895 PA 216 (1897 CL 10423), held that there was no error in precluding the jury from considering a damage award on those matters.

Thereafter, Michigan's libel and slander statute went through various changes, see 1915 CL 12757 and 12759, and eventually, before the enactment of the RJA in 1961, the Legislature codified imputation of criminal conduct and lack of chastity as constituting defamation per se, while continuing to require "actual damages" in relation to false and defamatory statements about a person's property, business, trade, profession, or occupation, 1929 CL 14471-14473; 1948 CL

---

[2] We note that even before the amendment of MCL 600.2911 in 1988, see 1988 PA 396, MCL 600.2911(1) referred solely to "lack of chastity" and "commission of a criminal offense," 1961 PA 236. And MCL 600.2911(2)(a) demanded proof of "actual damages" in relation to defamation concerning "property, business, trade, profession, occupation, or feelings." 1961 PA 236.

620.21-620.23. We conclude that there simply is no basis in statute or binding caselaw to support Cetera's stance that false and defamatory statements about one's business constitute defamation per se.

In sum, we hold that Cetera failed to state a claim of defamation per se. We reject the application of *Henkel*, *Heritage Optical*, and *Croton* to override the plain and unambiguous language of MCL 600.2911(1) and (2)(a). Resort to defamation per se is only available when statements impute the commission of a crime or the lack of chastity.[3]

### D. DISCUSSION OF EXEMPLARY DAMAGES AND RESOLUTION

In regard to Cetera's count in the complaint regarding exemplary damages, the trial court astutely recognized that a claim for exemplary damages is not an independent cause of action but simply a form of damages for, in this instance, defamation. The trial court ruled that even were Cetera able to proceed on its defamation-per-se claim, it would not be eligible for exemplary damages because as a matter of law, Mileto did not act with the requisite malice. On appeal, Cetera argues that there exist jury questions concerning whether Mileto retracted her statements in accordance with MCL 600.2911(2)(b) and whether she wrote the posts with malice.

Once again, MCL 600.2911(2)(a) provides that "[e]xcept as provided in subdivision (b), in actions based on libel or slander the plaintiff is entitled to recover only for the actual damages which he or she has suffered in respect to his or her property, business, trade, profession, occupation, or feelings." And subdivision (b) sets forth retraction-request criteria for obtaining exemplary damages.[4] In tandem, we construe MCL 600.2911(2)(a) and (b) to mean that a plaintiff can potentially recover exemplary damages *on top of actual damages* based on libel or slander when harm is sustained with respect to, in pertinent part, the plaintiff's business, trade, profession, or occupation. We do not interpret the language to suggest that exemplary damages can be awarded as an alternative to or instead of actual damages. Indeed, absent defamation per se and special harm in the form of actual business losses, the elements of defamation cannot be established. *Smith*, 487 Mich at 113.

Our construction of how MCL 600.2911(2)(a) and (b) work in conjunction with each other—that is, exemplary damages can potentially be recovered on top of an award of actual damages—is supported by our Supreme Court's opinion in *Peisner v Detroit Free Press, Inc*, 421 Mich 125; 364 NW2d 600 (1984). The *Peisner* Court observed that "exemplary and punitive damages pick up where actual damages leave off," *id.* at 135, and that "while in fact both 'actual' and 'exemplary and punitive' damages compensate the plaintiff, the latter operates to increase

---

[3] In light of our holding, it is unnecessary to address any of the additional arguments posed by Cetera relative to the claim of defamation per se.

[4] We are limiting our language and discussion to exemplary damages because Cetera did not make a claim for punitive damages; however, our analysis and reasoning would apply to both exemplary and punitive damages.

'actual' compensation," *id.* at 141.[5]  Accordingly, because there was no defamation per se and Cetera does not argue that it can show actual damages or special harm to its photography business, there can be no exemplary damages.  Thus, we hold that the trial court did not err by summarily dismissing Cetera's claim for exemplary damages.


## E.  DISCUSSION OF FALSE LIGHT INVASION OF PRIVACY AND RESOLUTION

The trial court summarily dismissed the FLIOP claim because it determined that Mileto did not broadcast the information in the postings to the general public or to a large enough number of people.  The court also found that the FLIOP claim failed because the broadcasted information was not unreasonable or highly objectionable, nor did Mileto act with the required recklessness in broadcasting the information.  On appeal, Cetera challenges each of the trial court's conclusions.

In *Puetz v Spectrum Health Hosps*, 324 Mich App 51, 69; 919 NW2d 439 (2018), this Court stated:

> An invasion-of-privacy claim protects against four types of invasion of privacy: (1) intrusion upon the plaintiff's seclusion or solitude or into his private affairs; (2) public disclosure of embarrassing private facts about the plaintiff; (3) publicity that places the plaintiff in a false light in the public eye; and (4) appropriation, for the defendant's advantage, of the plaintiff's name or likeness. In this case, Puetz's claim is based on the third type: false light. In order to maintain an action for false-light invasion of privacy, a plaintiff must show that the defendant broadcast to the public in general, or to a large number of people, information that was unreasonable and highly objectionable by attributing to the plaintiff characteristics, conduct, or beliefs that were false and placed the plaintiff in a false position. Further, the defendant must have known of or acted in reckless disregard as to the falsity of the publicized matter and the false light in which the plaintiff would be placed. [Quotation marks and citations omitted.]

We hold that Cetera's case simply does not fit a cause of action for FLIOP.  The circumstances did not involve Cetera's right to *privacy* or concern the need to protect Cetera's privacy.  In *Reed v Ponton*, 15 Mich App 423, 426; 166 NW2d 629 (1968), this Court, speaking of FLIOP, indicated that the required "publicity must lift the *curtain of privacy* on a subject matter that a reasonable man of ordinary sensibilities would find offensive and objectionable: supersensitiveness is not protected[.]" (Emphasis added.)  In *Beaumont v Brown*, 401 Mich 80, 93; 257 NW2d 522 (1977), overruled in part on other grounds by *Bradley v Bd of Ed of the Saranac Community Schs*, 455 Mich 285, 302; 565 NW2d 650 (1997), our Supreme Court, citing *De May v Roberts*, 46 Mich 160; 9 NW 146 (1881), noted that "Michigan was one of the first jurisdictions

---

[5] The Court indicated that exemplary and punitive damages were actually intended by the Legislature to be compensatory in nature, compensating the defamed person for injured feelings. *Peisner*, 421 Mich at 135.

to acknowledge the concept of 'right of privacy.' " After citing a 1948 opinion by the Michigan Supreme Court addressing a claim of invasion of privacy, the *Beaumont* Court observed:

> Since 1948 Michigan has continued to recognize the right of the individual to privacy. An overwhelming majority of state courts has recognized a common law right to privacy, and the United States Supreme Court has also recognized a constitutional right to privacy. Several states have enacted legislation protecting the individual's right to privacy. The federal government has recently enacted such legislation. In this ever-advancing society all are concerned that the individual's integrity and independence are not obliterated by the dissemination of unnecessary information *about his private life*. [*Beaumont*, 401 Mich at 95 (citations omitted; emphasis added).]

We find particularly persuasive an older case from California. In *Patton v Royal Indus, Inc*, 263 Cal App 2d 760, 763-764; 70 Cal Rptr 44 (1968), the two plaintiffs had worked for the defendant in the aircraft and spacecraft industry before resigning to go into business for themselves, and the defendant sent letters to numerous customers stating that the plaintiffs had been terminated from employment and replaced with better and more experienced and knowledgeable personnel. The plaintiffs pursued, in part, a FLIOP claim against the defendant. *Id.* at 767. The California court noted that "the tort of invasion of the right of privacy affords protection to a fundamentally different interest than that safeguarded by the law of defamation[,]" and it then ruled:

> [The] [p]laintiffs . . . refer to statements in the letter considered to be defamatory and say "All of this conduct placed plaintiffs in a 'false light.' " This, of course, is true, but it by no means indicates there was an invasion of the right of privacy. There is and could be no authority for the broad contention that publicity which places one in a false light is an invasion of his privacy, even though it discloses no fact whatever relative to his private life which he wishes to keep secret. Neither Prosser nor any other authority has ever said anything of the sort.
>
> The argument of plaintiffs blandly ignores the fact that what is public is not private and what is private is not public. . . . . [*Id.*]

In the instant case, Mileto's postings concerned Cetera's public business operations; there was nothing of a personal and private nature in the postings. We fail to see how complaints regarding the manner in which Cetera conducted its business, even if false and unreasonable, had any relationship to the private lives of Ava or Julian Cetera. We conclude that this is not a case implicating the right to privacy. Moreover, we hold as a matter of law that the postings cannot be characterized as being *highly* objectionable, especially considering that they did not concern

anyone's private life. *Puetz*, 324 Mich App at 69. Accordingly, we uphold the trial court's ruling dismissing the FLIOP claim.

We affirm. Having fully prevailed on appeal, Mileto may tax costs under MCR 7.219.


/s/ Jane E. Markey
/s/ Mark T. Boonstra
/s/ Michael J. Riordan